UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                )
LOCAL 2322 INTERNATIONAL                        )
BROTHERHOOD OF ELECTRICAL                       )
WORKERS,                                        )
                        Plaintiff               )
                                                )  Civil Action No. 04-12490-RWZ
v.                                              )
                                                )
VERIZON, INC.,                                  )
                        Defendant.              )
_____)


PLAINTIFF'S RULE 56.1 STATEMENT OF FACTS NOT IN MATERIAL DISPUTE
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff hereby submits its Rule 56.1 Statement of Facts Not in Material Dispute

in Support of its Motion for Summary Judgment ("SOF"), filed this date.

1.      At all times relevant, Local 2322, International Brotherhood of Electrical Workers

(the Union) and Verizon, Inc. (Verizon) were parties to a collective bargaining agreement

containing grievance and arbitration provisions.  [See Ex. 1, relevant provisions of the

parties' collective bargaining agreement.]

2.      Pursuant to the parties' agreement, the Union filed a grievance regarding a three-

day suspension given to Massachusetts-based bargaining-unit employee Thomas Ouellette

relating to the employee's one-day absence to attend the funeral of his wife's grandfather.

[See Ex. 2, Award of Arbitrator Fraser.]  During the processing of the grievance, Verizon

reduced the discipline to a one-day suspension, but the dispute could not be resolved, and

the Union demanded arbitration pursuant to the parties' agreement.  Id. at 3.

3.      On April 30, 2004, an arbitration hearing relating the Ouellette grievance was held

in Boston before Arbitrator Bruce Fraser, who had been duly appointed by the parties

pursuant to the terms of their collective bargaining agreement.  See id.

4.      On June 4, 2004, Arbitrator Fraser issued a Decision and Award sustaining the

Union's grievance.  Id.  The facts, as found by the arbitrator, show that the employee

originally believed he was contractually entitled to paid leave for the funeral, and that

when he learned otherwise, he and Supervisor Terry Brown failed to communicate

effectively about whether the employee was approved for a day off to attend the funeral.

Id. at 1-4.  Thus, the case involved two days for which Ouellette was not paid by Verizon.

The first day, the day of the funeral, the company refused to pay Ouellette, and the very

next day, Ouellette was suspended without pay.  Id.  The arbitrator held that, "[b]ut for the

poor communication of the two principal players in the grievance – Ouelette [sic] and

Brown – there is every reason to believe Ouellette would have been given the day off …."

Id. at 4.  The arbitrator therefore concluded that the one-day suspension was not

warranted, and his award states,

> The one day suspension given to Thomas Ouellette was not for just
> cause. The day shall be converted to leave without pay and the
> discipline removed from his file.

Id. at 5.

5.      Nowhere in the opinion does the arbitrator make any finding about how the

company treated the one-day funeral leave.  See id.  The Union therefore correctly

assumed that "the day" the arbitrator mentioned in the second sentence of the award

referred to the funeral-leave day, which should be treated as leave without pay, and that

the arbitrator's finding that the suspension was without just cause indicated the arbitrator's

intention that Mr. Ouellette should be made whole for the unwarranted one-day suspension.  [See Ex. 3.]

6.      On June 24, 2004, after Verizon refused to make the employee whole for the one-day suspension, the Union, through its counsel, sent a letter to Arbitrator Fraser, through the American Arbitration Association, with a copy to Verizon's counsel, seeking clarification of the arbitrator's decision.  [Ex. 3.]  The Union sought to clarify that it was the day the employee missed for the funeral that was to be converted to leave without pay and that Verizon was expected to make the employee whole for the one-day suspension, which the arbitrator had found to be without just cause.  Id.

7.      Upon receipt of the Union's letter, and prior to forwarding the Union's letter to the arbitrator, the American Arbitration Association representative sent a letter to the parties giving Verizon the opportunity to respond to the Union's letter.  [Ex. 4.]

8.      Verizon, through its counsel, submitted a timely response to the arbitrator, through the American Arbitration Association.  [Ex. 5]

9.      On July 1, 2004, the American Arbitration Association sent both letters to the arbitrator, requesting that the arbitrator advise the parties of his determination as soon as possible.  [Ex. 6.]

10.     On August 16, 2004, the arbitrator clarified his award to make the employee whole for the one-day suspension that the arbitrator had found to be without cause.  [Ex. 7.]  The award, as clarified, states,

> The one day suspension give [sic] to Thomas Ouellette was not for just cause.  He shall be made whole for all lost wages and benefits arising from this suspension and the discipline shall be removed from his file
>
> The day of the funeral shall be treated as day of leave without pay.

Id.

11.     The clarified award was transmitted to the parties by the American Arbitration Association on August 20, 2004.  [Ex. 8.]

12.     At no time after August 20, 2004, did Verizon institute an action to vacate the award as clarified by the arbitrator.

13.     On November 24, 2004, the Union filed the present action to confirm the arbitration award, as clarified by the arbitrator.

14.     In response to the Union's complaint, Verizon raised as an affirmative defense its contention that the arbitrator was without the authority to clarify his award and made an unsubstantiated allegation that the arbitrator engaged in *ex parte* communication with the Union prior to clarifying his award.

Respectfully submitted,

LOCAL 2322, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

By its attorneys,


 s/Alfred Gordon
Harold L. Lichten, BBO #549689
Alfred Gordon, BBO #630456
Pyle, Rome, Lichten, Ehrenberg &
        Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
Date:   April15, 2005                    (617) 367-7200

4

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served on the attorneys of record for each party by _____U.S. Mail_____ on April 15, 2005.
(method)

_____s/Alfred Gordon_____
Alfred Gordon



Agreement between
**VERIZON NEW ENGLAND INC., TELESECTOR
RESOURCES GROUP, INC. and VERIZON ADVANCED
DATA INC.**

AND

**INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS
(A.F.L.- C.I.O.)
LOCALS 2222, 2313, 2320, 2321, 2322,
2323, 2324, 2325, 2326, 2327**

The following sets forth the understandings reached by the above parties after regional and local negotiations of changes to existing collective bargaining agreements on wages, hours, terms and conditions of employment.

This Agreement will be effective August 6, 2000, unless the provisions provide otherwise; provided, however, that the amendments will be null and void and considered not to have been in effect unless the Company receives from the Union notice of ratification twenty-one days following the signing of this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement after approval by the System Council T-6 hereby agree to be bound by this Agreement and have caused this Agreement to be executed in their names by their duly authorized representatives this 20th day of August, 2000.

FOR THE COMPANY

Richard W. Lawrontacque
Chairperson, Plant Bargaining Committee

John Hamm
Chairperson, Traffic Bargaining Committee

Daniel S. Dudas
Chairperson, Accounting Bargaining Committee

Bruce B. Carter
Chairperson, Sales Bargaining Committee

FOR THE UNION

Richard B. Sugrue
Chairperson, Plant Negotiating Committee
Business Manager-Local 2322

Martha Walter
Chairperson, Traffic Negotiating Committee

Linda A. Harrison
Chairperson, Accounting Negotiating Committee

William C. McLaun
Chairperson, Sales Negotiating Committee
Business Manager-Local 2313

Myles Calvey
Business Manager-Local 2222

Billy Bowman
Business Manager-Local 2324

Peter J. Sweeney
Business Manager-Local 2313

Business Manager-Local 2325

Neil Meskelfrey
Business Manager-Local 2320

Richard L. Tait
Business Manager-Local 2326

Frank McKenny
Business Manager-Local 2321

Dennis J. Lilly
Business Manager-Local 2327

Dated: August 20, 2000

This Agreement was entered into on the 20th day of August, 2000, by and between Verizon New England Inc., Telesector Resources Group, Inc. and Verizon Advanced Data Inc. (hereinafter called the Company) and Locals 2222, 2313, 2320, 2321, 2322, 2323, 2324, 2325, 2326, 2327 of the International Brotherhood of Electrical Workers, AFL-CIO collectively comprising the bargaining agent (hereinafter called the Union). Although transfers of employment between Verizon New England Inc, Telesector Resources Group, Inc. and Verizon Advanced Data Inc. involving the transfer of employees with their work are outside the scope of this Agreement, such transfer(s) can be revoked under the grievance and arbitration provisions of this Agreement if it is found that the decision to make such transfer(s) was made arbitrarily or in bad faith.

## WITNESSETH THAT

WHEREAS, the parties have negotiated with respect to terms and conditions of employment and, as a result, mutually satisfactory and acceptable understandings have been reached, which, in the interest of maintaining satisfactory and harmonious industrial relations, the parties desire to set forth in writing. NOW THEREFORE, be it known that in consideration of the covenants, terms and conditions herein contained, the Union and the Company agree as follows:

## DURATION OF AGREEMENT

This Agreement shall (except as otherwise expressly provided herein) become effective on August 6, 2000.

This Agreement shall continue in full force and effect until 11:59 P.M. on August 2, 2003 at which time it shall terminate. However, this Agreement may be extended from time to time beyond its expiration date by mutual agreement in writing of the representatives of the Company and the Union.

G3

# ARTICLE G7
## Union Bulletin Boards

**G7.01**   The Company agrees to furnish, without charge, space at bargaining unit locations to erect free access bulletin boards of a size approximately 30 by 30 inches. Bulletin boards will be furnished by the Union and erected by the Company. The number to be erected and the locations at which erected shall be mutually decided upon by authorized Union officials and Company representatives.

**G7.02**   Bulletin boards are to be used by the Union for posting notices concerning official Union business, or other Union related matters, provided that if anything is posted on these bulletin boards that is considered by the Company to be controversial or derogatory to any individual or organization the Union agrees to remove such posted matter on demand and if it fails or refuses to do so, such matter may be removed by the Company.

# ARTICLE G8
## Grievance Procedure

**G8.01**   A grievance is a complaint involving the interpretation or application of any of the provisions of this Agreement or a complaint that an employee or group of employees for whom the Union is the bargaining agent has, in any manner, been unfairly treated. When an employee has a complaint he or she may first consult his or her immediate supervisor. If the complaint is not resolved the employee may then follow the grievance procedure outlined below:

STEP 1:   The Union shall present the grievance to the employee's Immediate Supervisor. In the event the grievance is not adjusted it shall be presented to the employee's Second Level Manager except in Logistics Services. The grievance will be processed and a decision rendered within ten (10) working days of initial presentation by the Union to the employee's Immediate Supervisor. If the grievance involves a discharge, the Union may omit step 1 and submit the grievance directly to Step 2.

STEP 2:   The Union may next present appeal to the Director Level or a designated representative. Grievances so appealed will be processed and a decision rendered within ten (10) working days of receipt of appeal unless the time period is extended by mutual consent.



STEP 3:    The Union may next present appeal for adjustment to the Chairperson of the Bargaining Committee. Grievances appealed to the Chairperson of the Bargaining Committee will be processed and a decision rendered within ten (10) working days of receipt of appeal unless the time period is extended by mutual consent.

**G8.02**    Grievances must be presented initially within forty-five (45) calendar days of the occurrence which gave rise to the grievance. Notification of appeal shall be in writing at Steps 2 and 3 and shall set forth the act or occurrence grieved, the name or names of employees aggrieved where practical, the contract provision alleged to have been violated, if any, and the remedy requested. The specification of additional contract provisions alleged to have been violated may be made in subsequent appeals up to the 3rd step of the grievance procedure. Written appeal must be received by the Company representative designated and authorized to handle grievances at Steps 2 and 3 within ten (10) calendar days following the date of notice to the Union of the decision reached at the previous step.

**G8.03**    At each step of the grievance procedure the supervisor hearing the grievance will tell the Union the reason for the decision reached at that step. Disposition of any grievance not appealed within the specified time limit shall be considered final. Failure of the Company to process a grievance and render a decision within the specified time limit entitles the Union to appeal to the next step of the grievance procedure.

**G8.04**    Within seven (7) calendar days of the date the decision is rendered at Step 2 and/or Step 3 of the grievance procedure the Company will furnish to the Union a written statement confirming its decision.

**G8.05**    The Company shall pay not more than two (2) Union representatives at Step 1 grievance meetings, not more than two (2) Union representatives at Step 2 grievance meetings, and not more than two (2) Union representatives at Step 3 grievance meetings.

**G8.06**    Any individual employee or a group of employees may present grievances to the Company at any time and such grievances may be adjusted without the intervention of the Union as long as the adjustment is not inconsistent with the terms of the collective bargaining agreement, provided that the Union has been given an opportunity to be present at such adjustment.

**G8.07**    Once a Union representative has notified a Company representative of a grievance, the Company will not discuss the

G11

matter with the individual employee or employees involved without first affording a representative of the Union an opportunity to be present, at a time and place mutually agreeable to the Union and the Company.

**G8.08**  The Company recognizes the right of the Union to make a reasonable investigation of the circumstances surrounding any grievance and agrees to cooperate with the Union in such investigation.

## ARTICLE G9
### Arbitration

**G9.01**  If the Union contends that the intent and meaning of one or more of the Articles of this Agreement (except as otherwise provided in the Agreement) has been violated by the Company, it may demand arbitration provided that written notice is received by the Company no later than sixty (60) calendar days after the conclusion of the final step of the grievance procedure.

**G9.02**  Arbitration shall be conducted through a Board of Arbitration consisting of one (1) representative elected by the Union, one (1) representative selected by the Company, and an impartial chairman mutually chosen by the parties.  The procedure for arbitration shall be as follows:

(a) Each party shall designate a representative to coordinate with the American Arbitration Association on all matters.

(b) The representatives of the parties shall select the impartial chairman by mutual agreement within fifteen (15) days of Company receipt of demand for arbitration involving a discharge, and within fifteen (15) days of the union's request to schedule for hearing any other arbitration demand. If the representatives of the parties are unable to agree on the impartial chairman within the fifteen (15) days, either party can request the American Arbitration Association to expeditiously submit a series of three lists from which an arbitrator will be chosen by the parties in accordance with their three list procedure.

(c) If the Company contends at the hearing that the grievance desired to be arbitrated does not raise an arbitrable issue, the Board of Arbitration shall first hear and determine separately in accordance with paragraph (e) below, the question of

G12

whether an arbitrable issue has been presented. If the Board decides that the issue or issues are arbitrable it shall have authority to further hear and determine the merits of the grievance.

(d) Hearings and post-hearing activities shall be conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association. If either party wishes to submit a post-hearing brief, it will do so within thirty (30) days of receipt of transcript of the hearing, unless the parties agree otherwise.

(e) The decision of a majority of the Board shall be the decision of the Board of Arbitration. The Board shall have no power to add to, subtract from, modify or disregard any of the provisions of this Agreement nor shall it have power to establish or determine any new wage rate, job classification or job differential. The decision of the Board, which shall contain a full statement of the grounds upon which the issue or issues are decided, shall be final and binding on the Union and the Company.

(f) Each party shall bear the expense of preparing and presenting its own case. The compensation and expenses of the impartial chairman and any other expenses of such Board shall be borne equally by the parties.

G9.03   (a) If the grievance involves a discharge or disciplinary action, the Board of Arbitration shall determine whether the discharge or disciplinary action was for just cause. If the Board of Arbitration finds that the discharge or disciplinary action was without just cause, the employee shall be reinstated. At the Board's discretion the employee may be granted lost seniority, the employee's basic weekly wage rate for straight time lost, and an additional amount not to exceed ten (10) percent of the former, such amount to be in lieu of all other losses which the employee may have incurred during the time the employee was separated from the Company. No other benefits, lost overtime opportunities, or other amounts shall be paid. The Board's total back pay award, as calculated above shall be reduced by: all interim earned income, including overtime earnings; unemployment compensation; termination pay; and

G13

Company pension payments. The Board shall have the discretion to deduct other amounts deemed appropriate, such as Social Security Disability payments etc.

(b) If such grievance concerns any other determination of the Company involving the exercise of discretion, such determination shall not be set aside by the Board of Arbitration unless it shall find it to have been made arbitrarily or in bad faith.

**G9.04**   Any question in connection with the discipline, demotion or dismissal of any regular employee having less than one (1) year of net credited service, or any temporary employee having less than two (2) years of net credited service, at the time of such discipline, demotion or dismissal is specifically excluded from the arbitration procedures outlined in this Article.

**G9.05**   Any arbitration case which has not been scheduled for hearing by the parties within twenty-four (24) months of the date of initial receipt by the Company of the demand for arbitration, or thirty-six (36) months if the case involves a discharge, will be considered to have been finally disposed of under the provisions of Article G8, unless the Company and the Union mutually agree in writing to extend the time period.

## ARTICLE G9A
### Expedited Arbitration

**G9A.01**   The procedures herein will apply to arbitration involving disciplinary action which is specifically subject to arbitration under the collective bargaining agreement.

**G9A.02**   In lieu of the procedures specified in Article G9 of this Agreement, any grievance involving the suspension of an individual employee, except those which also involve an issue of arbitrability, contract interpretation, or work stoppage (strike) activity and those which are also the subject of an administrative charge or court action shall be submitted to arbitration under the expedited arbitration procedure hereinafter provided within fifteen (15) calendar days after the filing of a request for arbitration. In all other grievances involving disciplinary action which are specifically subject to arbitration under Article G9 of this Agreement, both parties may, within fifteen (15) calendar days after the filing of the request for arbitration, elect to use the expedited arbitration procedure hereinafter provided. The election shall be in

G14

writing and, when signed by authorized representatives of the parties, shall be irrevocable. If no such election is made within the foregoing time period, the arbitration procedure in Article G9 shall be followed.

**G9A.03** As soon as possible after this Agreement becomes final and binding, a panel of 5 umpires shall be selected by the parties. Each umpire shall serve until the termination of this Agreement unless his or her services are terminated earlier by written notice from either party to the other. The umpire shall be notified of his or her termination by joint letter from the parties. The umpire shall conclude his or her services by settling any grievance previously heard. A successor umpire shall be selected by the parties. Umpires shall be assigned cases in rotating order designated by the parties. If an umpire is not available for a hearing within ten (10) working days after receiving an assignment, the case will be passed to the next umpire. If no one can hear the case within ten (10) working days, the case will be assigned to the umpire who can hear the case on the earliest date.

**G9A.04** The procedure for expedited arbitration shall be as follows:

(a) The parties shall notify the umpire in writing on the day of agreement or date of arbitration demands in suspension cases to settle a grievance by expedited arbitration. The umpire shall notify the parties in writing of the hearing date.

(b) The parties may submit to the umpire prior to the hearing a written stipulation of all facts not in dispute.

(c) The hearing shall be informal without formal rules of evidence and without a transcript. However, the umpire shall be satisfied himself or herself that the evidence submitted is of a type on which he or she can rely, that the hearing is in all respects a fair one, and that all facts necessary to a fair settlement and reasonably obtainable are brought before the umpire.

(d) Within five (5) working days after the hearing, each party may submit a brief written summary of the issues raised at the hearing and arguments supporting its position. The umpire shall give his or her settlement within five (5) working days after receiving the briefs. He or she shall provide the parties a brief written statement of the reasons supporting his or her settlement.

G15

(e) The umpire's settlement shall apply only to the instant grievance, which shall be settled thereby. It shall not constitute a precedent for other cases or grievances and may not be cited or used as a precedent in other arbitration matters between the parties unless the settlement or a modification thereof is adopted by the written concurrence of the representatives of each party at the third step of the grievance procedure.

(f) The time limits in (a) and (d) of this Section may be extended by agreement of the parties or at the umpire's request, in either case only in emergency situations. Such extensions shall not circumvent the purpose of this procedure.

(g) In any grievance arbitrated under the provisions of this Section, the Company shall under no circumstances be liable for backpay for more than six (6) months (plus any time that the processing of the grievance or arbitration was delayed at the specific request of the Company) after the date of the disciplinary action. Delays requested by the Union in which the Company concurs shall not be included in such additional time.

(h) The umpire shall have no authority to add to, subtract from or modify any provisions of this Agreement.

(i) The decision of the umpire will settle the grievance, and the Company and the Union agree to abide by such decision. The compensation and expenses of the umpire and the general expenses of the arbitration shall be borne by the Company and the Union in equal parts. Each party shall bear the expense of its representatives and witnesses.

(j) The time limit for requesting arbitration under this provision shall be the same as in existing procedures.

## Article G9B
## Mediation

## MEDIATION PROCEDURES

**G9B.01** For grievances involving discharges or disciplinary suspensions which are specifically subject to arbitration under Article G9 of this

G16

JUN 0 9 2004

In the Matter of the Arbitration between:

| IBEW, LOCAL 2322 |
| --- |
| -and- |
| VERIZON |

Re: 11 E 300 02702 03 (Thomas Ouellette Suspension and Letter in Personnel Folder)

Having been designated as the Arbitrator in accordance with the provisions of the parties' collective bargaining agreement, and having heard and considered the evidence presented, I award as follows:

    The one day suspension given to Thomas Ouellette was not for just cause.
The day shall be converted to leave without pay and the discipline removed from his file.

June 4, 2004
Scituate, Massachusetts

Bruce Fraser
Arbitrator

| IBEW, Local 2322 | AAA. No. 11 E 300 02702 03 |
| -and- | Thomas Ouellette Suspension |
| Verizon | June 4, 2004 |

An arbitration hearing was held on April 30, 2004 in Boston, Massachusetts. The Union was represented by Harold Lichten, Esq., and the Company was represented by Alicia Alonso Matos, Esq. Post-hearing briefs were received by the arbitrator on May 16. 2004.

## THE ISSUE

The parties agreed upon the following issue:

Was the one-day suspension given to Thomas Ouellette for just cause?

If not, what shall be the remedy

## THE FACTS

In November, 2002, Thomas Ouellette, the grievant, worked in the Taunton facility as a Central Office Technician. On Friday, November 29, his wife's grandfather died. His wife, who had formerly worked for Verizon, contacted a current employee about the time-off her husband would be permitted under the Agreement for bereavement, and was told it was three days. Operating on this information, when Ouellette found out on Sunday evening that the service would be held the next day, he called his immediate supervisor, Terry Brown, and left a message on his voice mail to the effect that he would be absent on Monday through Wednesday and if there were any problems with this, to please call him back. There was some dispute over what the voice mail message actually said, but I don't find it relevant.

When Brown reached work at 8 am on Monday morning and checked his voice mail, he contacted his supervisor Manager of New England Transport Surveillance Center Barry Sullivan

who informed him that Ouellette was not entitled to the days off but they could work something

out for the funeral. He immediately called Ouellette and informed him of this fact, reading to

him the relevant provision in the contract, P10.03.

> P10.03  An employee may be granted time off with pay, for excused absence be-
> cause of death in the immediate family normally not to exceed three working
> days. The Company's decision in each case must be based upon circumstances in
> such case.

> The "immediate" family shall be considered to mean husband, wife, domestic
> partner, son, daughter, mother, father, brother, sister, mother-in-law, father-in-
> law, grandparent and grandchild; also, any other relative living in the employee's
> household.

Brown testified that he volunteered "I could try to work out time to go to the funeral" but

stated that Ouellette never said he wanted the entire day off or told him at that time when the fu-

neral service would take place. He stated that he told Ouellette that he expected him at work that

day. Ouellette said he would call him back.

According to Brown, Ouellette called back about 10:30 am and informed him that the funeral

was that day, that he couldn't come in, and that he would be back the next day, Tuesday. Brown

stated that he once again told Ouellette that he was expected in that day. This comment was

overheard by Team Leader Teresa Pontbriand who was nearby. Brown stated that he is not au-

thorized by his supervisor's policy to give more than 4 hours of time off and would have had to

contact Barry Sullivan, his supervisor, to receive authorization for the entire day. Brown never

asked for such authorization, but went to Sullivan again, stated that the grievant refused to report

to work, and did not inform him that the funeral was that day.

When the grievant reported for work on Tuesday, December 3, 2002, he was suspended for

three days for an unauthorized absence. Brown indicated that Ouellette expressed surprise at this

decision, stating that Ouellette believed he had been given Approved Absence (AP) time for the day of the funeral.

The Union grieved, the suspension was reduced to one day, but when the dispute could not be resolved, the Union filed for arbitration.

Sullivan testified that he had two conversation with Brown. In the first, he was informed that Ouellette was not coming to work and felt he was entitled contractually to three days, whereupon he told Brown to call the grievant, tell him that this was not the case, but that they could work something out so that he could attend the funeral. In the second, Brown told him Ouellette was not coming to work but was not told by Brown that the funeral was in a few hours. Based on this information, he called Labor Relations and was told that a short suspension was warranted, but that he should use his own discretion. He said that if he had known the funeral was that day, he would have considered giving him the time off.

The grievant testified that he first learned on Sunday evening that the funeral service for his wife's grandfather would be held on Monday at 6 pm. He stated that he called Brown, and after hearing a message that stated, "You have reached Terry Brown. Please leave a message," he left a message indicating that he thought he had 3 days off contractually, and if there were any problems, he could be reached at home. He testified at the hearing that his wife needed him, since she was preparing food for after the service, was preparing a eulogy to be given at the service, and could not watch their 3 month old son.

Ouellette testified that when Brown called him the next morning, he told him that he was not entitled to three days contractually, but he could grant me one day for the funeral service. Ouellette said he would call back Brown, consulted with the Union, found out that Brown was cor-

rect, and called Brown about 10:30 stating that the funeral was that day, that he would take the one day he had been given, and said he would see him the next day. According to Ouellette, Brown acknowledged that they would meet the next day and never stated he could not have the day off. He agreed that he expressed surprise the next day when he was suspended for three days after having been given a day off.

The Union provided testimony of several employees who had received AP time for the death of a spouse's or finance's grandparent, a benefit not covered by the contract. One such granting was given after the fact. There was no evidence, other than the case at hand, of cases where time off was denied even though it is not contractually mandated.

## DISCUSSION

The evidence shows that Verizon has been very reasonable in permitting company personnel time off for bereavement purposes when the funeral was for someone not specifically covered by Section P10.03. But for the poor communication of the two principal players in the grievance – Ouelette and Brown – there is every reason to believe Ouellette would have been given the day off on Monday, December 2, 2002.

For his part, Ouellette failed to read his contract to see what rights he had under P10.03. Had he done this, he could have reached management personnel on that Sunday evening to secure the necessary time off after he did not reach Brown directly. In addition, he failed to notify Brown during his first phone call at 8 am that the funeral was on that day, thereby alerting him to the need for time off on that day. Moreover, there is no evidence that he ever conveyed to Brown that he had family responsibilities during the day that he felt obligated to fulfill. Finally, there is

5

no evidence that he specifically asked for the day off, but just assumed he was given it, although the testimony from both parties is murky, at best.

For his part, Brown failed to inquire of Ouellette's needs surrounding the funeral. Had he simply asked, he could have found the difficulty Ouelette found himself facing: a conflict between reporting for work and fulfilling obligations at home. Given he had a limit of authorizing but 4 hours time off, he might have suggested that Ouellette take the rest of the day off and make up the time on another day. Or, once he realized that the funeral was that day, he could have notified his supervisor of this fact and asked permission to given Ouellette the entire day off. Sullivan's testimony indicated he would have been sympathetic. Instead, Brown simply reported that Ouellette was not going report for work that day.

Both principal player were at fault here and discipline is not warranted. Rather, the day should be converted to leave without pay and the discipline removed from the grievant's file.

**AWARD**

The one day suspension given to Thomas Ouellette was not for just cause.
The day shall be converted to leave without pay and the discipline removed from his file.

June 4, 2004
Scituate, MA

Bruce Fraser
Arbitrator

## PYLE, ROME, LICHTEN & EHRENBERG, P.C.

Attorneys at Law
18 Tremont Street, Suite 500
Boston, MA 02108

Telephone (617) 367-7200
Fax (617) 367-4820

Warren H. Pyle
David B. Rome
Harold L. Lichten*
Betsy Ehrenberg
Shannon Liss-Riordan**
Terence E. Coles
Katherine D. Shea

M. Amy Carlin
Catherine Highet
Nicole Horberg Decter

*Also admitted in Maine
**Also admitted in New York

***Tod A. Cochran
OF COUNSEL

***Also admitted in California

June 24, 2004

Mr. Bruce Fraser
c/o Ms. Claire M. Connelly
American Arbitration Association
133 Federal St., 11th Floor
Boston, MA 02110

Re:     IBEW, Local 2322 and Verizon
        Grievance:   Thomas Ouellette – One Day Suspension & Letter in
                     Personnel Folder (#21-03)
        AAA Case No. 11-E-300-02702-03

Dear Arbitrator Fraser:

I am writing to you because an unfortunate conflict has arisen regarding the interpretation of the remedy portion of your award in the above-titled case.

As you may recall, this case involved Thomas Ouellette taking one day off to help with and attend the funeral of his wife's grandfather. He was not paid for that day and the Union did not seek back pay for the day he was at the funeral. In addition to that day, he was suspended for one day and, of course, not paid for that one-day suspension. In the award portion of your decision, you hold:

> The one day suspension given to Thomas Ouellette was not for just cause. The day shall be converted to leave without pay and the discipline removed from his file.

It seems absolutely clear that the "day" which you hold should be "converted to leave without pay" is the day that Mr. Ouellette attended the funeral. The second additional day for which he was suspended and not paid, is obviously covered by that part of your award that says "the one day suspension . . . was not for just cause." As such, Mr. Ouellette is clearly entitled to pay for that day.

PYLE, ROME, LICHTEN & EHRENBERG, P.C.

Mr. Bruce Fraser
June 24, 2004
Page 2


The Company has taken the position that your award means that they don't have to pay Mr. Ouellette for both days, the day he went to the funeral and the day for which he was suspended. I believe that this is both a disingenuous and patently absurd interpretation of your decision. Because the parties are unable to resolve this dispute, the Union asks that you issue a short letter clarifying your decision.

Sincerely,

Harold L. Lichten

HLL/cjn
cc:    Alicia Alonso Matos, Esq.
       Mr. Michael Gallagher

American Arbitration Association
*Dispute Resolution Services Worldwide*

New England Labor Center  **JUN 2 8 2004**

June 25, 2004

133 Federal Street, 11th Floor, Boston, MA 02110-1703
telephone: 617-451-6600 facsimile: 617-451-0763
internet: http://www.adr.org/

Harold L. Lichten, Esq.
Pyle, Rome, Lichten & Ehrenberg P.C.
18 Tremont Street
Suite 500
Boston, MA  02108

John S. May, Esq.
Verizon
185 Franklin Street, Room 1300
Boston, MA  02110

Re: 11 E 300 02702 03
    IBEW, Local 2322
    and
    Verizon

Grievances:    #21-03 Thomas Ouellette - One Day Suspension & Letter in Personnel Folder

Dear Parties:

We acknowledge receipt of a letter dated June 24, 2004 from Harold Lichten and we note that a copy of Mr. Lichten's letter was sent to Alicia Alonso Matos.

The Employer is requested to submit comments relative to Mr. Lichten's letter by no later than July 2, 2004.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Claire M. Connelly
Assistant Supervisor
617 695 6014
connellyc@adr.org

cc:    Richard R. Cappiello
      Stephen J. Lowrie



FOLEY
HOAG LLP
ATTORNEYS AT LAW
JUL 0 2 2004

July 1, 2004

Alicia Alonso Matos
Boston Office
617.832.3016
amatos@foleyhoag.com

**By Hand**

Bruce Fraser, Arbitrator
c/o Claire M. Connelly
American Arbitration Association
133 Federal Street, 11th Floor
Boston, MA 02110

      Re:    IBEW, Local 2322 and Verizon
              AAA Case No. 11-E-300-02702-03 (Suspension of Thomas Ouellette)

Dear Arbitrator Fraser:

      I write to respond to the Union's letter of June 24, 2004.

      On June 4, 2004, the Arbitrator issued an award in this matter and this grievance was closed. Twenty-four days later, in the guise of a request for clarification, the Union asks the Arbitrator to re-open the matter and re-decide the case.

      The Arbitrator has no authority to alter his decision in this matter, once rendered. In writing its letter, the Union's agenda is clearly not to request clarification of the Arbitrator's award, which is unambiguous, but to request reconsideration because it is dissatisfied with the result. Article G9A(i) of the parties' collective bargaining agreement provides that "[t]he decision of the umpire will settle the grievance, and the Company and the Union agree to abide by such decision." There is no contract provision that permits a party to request reconsideration of an award. The Arbitrator must disregard the Union's letter.

      The Company intends to honor its obligation to abide by the Arbitrator's award; it will remove all reference to the discipline from Mr. Ouellette's personnel file and will convert the one-day suspension to a day without pay. If the Union disagrees with the Company's actions, its recourse, as the Union well knows, is to file a grievance.

      To the extent that the Arbitrator considers the Union's position, the Company asserts that there is no clarification required with regard to the Arbitrator's award in this case. The Company understands from the Arbitrator's opinion that he found that while

FHBoston/1076681.1

Bruce Fraser, Arbitrator
July 1, 2004
Page 2

there was not just cause to suspend for Mr. Ouellette's for his absence on the day he attended the funeral of his wife's grandfather, neither was Mr. Ouellette blameless for the failures of communication surrounding the issue. Therefore, the Arbitrator chose to rescind the suspension and ordered that that day be converted to a day without pay.

The Union's failure to understand your clear order is willful ignorance. There is nothing unclear about the very language they quote:

> The one day suspension given to Thomas Ouellette was not for just cause. The day shall be converted to leave without pay and the discipline removed from his file.

There is no ambiguity in this award. It is clear that "the day" in the second sentence refers back to the "the one day suspension" in the first sentence. It is absurd for the Union to claim not to understand it. The Company is directed to convert the suspension to leave without pay and to remove any reference to the discipline from the file.

There is no other day that can be *converted* to a day without pay. As found by the Arbitrator and as stated by the Union in its letter, the day that Mr. Ouellette took off to attend the funeral *is already a day of leave without pay*. One cannot convert something to what it already is. It is clear that the Arbitrator understood this. Indeed, on Mr. Ouellette's time sheet in evidence as Company Exhibit 1, December 2, 2002, the day of the funeral, appears as an "A" day. As was testified to at the hearing, an "A" day is a day of leave without pay. It is illogical and, frankly, disingenuous for the Union to suggest that perhaps you meant to say that the "A" day should be converted to an "A" day and that you meant for him to be paid for the suspension day and just forgot to say so.

Should the Arbitrator consider the Union's arguments, which the Company strenuously posits that he should not, the Company requests a conference call be held between the parties and the Arbitrator.

Very truly yours,

Alicia Alonso Matos

cc:     Harold L. Lichten, Esq.
        Stephen Lowrie

American Arbitration Association
*Dispute Resolution Services Worldwide*

**JUL – 6 2004**
*New England Labor Center*

July 1, 2004

133 Federal Street, 11th Floor, Boston, MA 02110-1703
telephone: 617-451-6600 facsimile: 617-451-0763
internet: http://www.adr.org/

Harold L. Lichten, Esq.
Pyle, Rome, Lichten & Ehrenberg P.C.
18 Tremont Street
Suite 500
Boston, MA 02108

John S. May, Esq.
Verizon
185 Franklin Street, Room 1300
Boston, MA 02110

Re: 11 E 300 02702 03
    IBEW, Local 2322
    and
    Verizon

Grievances:    #21-03 Thomas Ouellette - One Day Suspension & Letter in Personnel Folder

Dear Parties:

We acknowledge receipt of a letter dated June 24, 2004 from Harold Lichten and a letter in response dated July 1, 2004 from Alicia Alonso Matos.

Copies of the parties' letters are enclosed to the Arbitrator. The Association requests that the Arbitrator advise as to his determination as soon as possible.

Thank you for your continued cooperation.

Very truly yours,

Claire M. Connelly
Assistant Supervisor
617 695 6014
connellyc@adr.org

cc:    Bruce Fraser
       Richard R. Cappiello
       Stephen J. Lowrie

**BRUCE FRASER**
ARBITRATOR / MEDIATOR
730 CUSHING HIGHWAY
SCITUATE, MASSACHUSETTS 02066
Phone (781) 545-3598    Fax (781) 545-5127
bfraser@bu.edu

August 16, 2004

Ms. Claire Connelly
American Arbitration Association
133 Federal Street, 11th Floor
Boston, MA 02110-1703

In response your letter of July 1, 2004 and our joint telephone call, I clarify my award for Case 11 E 300 02702 03 (21-03) as follows:

The one day suspension give to Thomas Ouellette was not for just cause. He shall be made whole for all lost wages and benefits arising from this suspension and the discipline shall be removed from his file.

The day of the funeral shall be treated as day of leave without pay.

Sincerely,

Bruce Fraser
Arbitrator


RECEIVED
AUG 20 2004
AMERICAN ARBITRATION ASSOCIATION
BOSTON, MA

 American Arbitration Association
*Dispute Resolution Services Worldwide*

*New England Labor Center*

August 20, 2004

133 Federal Street, 11th Floor, Boston, MA 02110-1703
telephone: 617-451-6600 facsimile: 617-451-0763
internet: http://www.adr.org/

Harold L. Lichten, Esq.
Pyle, Rome, Lichten & Ehrenberg P.C.
18 Tremont Street
Suite 500
Boston, MA  02108

AUG 23 2004

John S. May, Esq.
Verizon
185 Franklin Street, Room 1300
Boston, MA  02110

Re: 11 300 E 02702 03
    IBEW, Local 2322
    and
    Verizon

Grievances:    #21-03 Thomas Ouellette - One Day Suspension & Letter in Personnel Folder

Dear Parties:

Enclosed to the parties is a copy of a letter dated August 16, 2004 from Arbitrator Bruce Fraser.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Claire M. Connelly
Assistant Supervisor
617 695 6014
connellyc@adr.org

cc:    Bruce Fraser
       Richard R. Cappiello
       Stephen J. Lowrie