UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LOCAL 2322 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br>     Plaintiff<br><br>v.<br><br>VERIZON, INC.,<br>     Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-12490-RWZ<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

The Plaintiff, Local 2322, International Brotherhood of Electrical Workers (the

Union), hereby submits it Memorandum of Law in Support of its Motion for Summary

Judgment.  Factual assertions are supported by the Plaintiff's attached Rule 56.1 Statement

of Facts Not in Material Dispute ("SOF").

The Union brought this action pursuant to section 301 of the Labor Management

Relations Act, 29 U.S.C. § 185, to confirm and enforce an arbitration award duly rendered

by an arbitrator pursuant to the collective bargaining agreement between the Union and the

Defendant, Verizon, Inc. (Verizon).  Because Verizon failed to file a motion to vacate the

award within the 30-day statute of limitations, it may not now raise any defenses that

would have supported a vacatur action, and the Union is thus entitled to summary

judgment in its favor on all counts.  Moreover, because Verizon intentionally ignored the

duly rendered arbitration award, thereby forcing the Union to file this action, the Court,

using its equitable powers, as articulated by the First Circuit, should impose significant

1

sanctions in the form of costs and attorneys' fees upon Verizon for requiring the Union to prosecute this "run-of-the-mill" arbitration case, which should have been resolved without the need for court action.

## II.    SUMMARY OF FACTS[1]

At all times relevant, the Union and Verizon were parties to a collective bargaining agreement containing grievance and arbitration provisions.  [Ex. 1; SOF ¶ 1.]  Pursuant to the parties' agreement, the Union filed a grievance over a three-day suspension Verizon had imposed upon Massachusetts-based bargaining-unit employee Thomas Oullette relating to the employee's one-day absence from work to attend the funeral of his wife's grandfather.  [Ex. 2; SOF ¶ 2.]  Verizon reduced the discipline to a one-day suspension, but the dispute could not be fully resolved, so the Union demanded to arbitrate the matter. [SOF ¶ 2.]

On April 30, 2004, an arbitration hearing regarding the Ouellette matter was held in Boston before Arbitrator Bruce Fraser.  [SOF ¶ 3.]  Thereafter, on June 4, 2004, Arbitrator Fraser issued a Decision and Award sustaining the Union's grievance.  [Ex. 2.] The facts, as found by the arbitrator, show that the employee originally believed he was contractually entitled to paid leave for the funeral.  Id.  When his supervisor, Terry Brown, told him that he was not entitled to paid leave for that day, Ouellette asked for the day off anyway to attend the funeral, but he and Brown failed to communicate effectively about whether he was approved for the day off.  Id. at 1-4.  Thus, the case involved two days for which Ouellette was not paid by Verizon.  The first day, the day of the funeral, the company refused to pay Ouellette, and the very next day, Ouellette was suspended without

---

[1] Factual assertions are supported by the Plaintiff's attached Rule 56.1 Statement of Facts Not in Material Dispute ("SOF") and the exhibits attached thereto.

pay.  Id.  The arbitrator therefore held that, "[b]ut for the poor communication of the two principal players in the grievance – Ouelette [sic] and Brown – there is every reason to believe Ouellette would have been given the day off …." Id. at 4.  The arbitrator concluded that "discipline is not warranted," and his award states,

> The one day suspension given to Thomas Ouellette was not for just cause. The day shall be converted to leave without pay and the discipline removed from his file.

Id. at 5.  [SOF ¶ 4.]

Nowhere in the opinion does the arbitrator make any factual finding about how the company treated the one-day funeral leave.  [SOF ¶ 5; Ex. 3.]  The Union therefore assumed (correctly, as it turned out) that "the day" the arbitrator mentioned in the second sentence of the award referred to the funeral-leave day, which should be treated as leave without pay, and that the arbitrator's finding that the suspension was without just cause indicated the arbitrator's intention that Mr. Ouellette should be made whole for the unwarranted suspension.  [See Ex. 3.]

Since the arbitrator had found the suspension to be without just cause, the Union expected that Verizon would make the employee whole for the day he was suspended, but when Verizon refused to do so, the Union sought clarification about this ambiguity from the arbitrator in written correspondence through the American Arbitration Association, with a copy to Verizon's counsel.  [SOF ¶ 6; Ex. 3.]  The Union sought to clarify that it was the day the employee missed for the funeral that was to be converted to leave without pay and that Verizon was expected to make the employee whole for the one-day suspension, which the arbitrator had found to be without just cause.  [SOF ¶ 6; Ex. 3.]  Verizon was given and accepted the opportunity to respond to the Union's letter, after

which the arbitrator issued a letter on August 16, 2004, clarifying his award.  [SOF ¶¶ 7-

10; Ex. 4-7.]  The award, as clarified by the arbitrator, states:

> The one day suspension give [sic] to Thomas Ouellette was not for
> just cause.  He shall be made whole for all lost wages and benefits
> arising from this suspension and the discipline shall be removed
> from his file
>
> The day of the funeral shall be treated as day of leave without pay.

[Ex. 7.]

The clarified award was transmitted to the parties by the American Arbitration

Association on August 20, 2004.  [SOF ¶ 11; Ex. 8.]  At no time after August 20, 2004,

did Verizon institute an action to vacate the award as clarified by the arbitrator. [SOF ¶

12.]  Rather, Verizon made its first challenge to the arbitrator's award in raising

affirmative defenses to this action, which the Union instituted on November 24, 2004.

[SOF ¶ 13; Compl.]  In those affirmative defenses, Verizon erroneously contends that the

arbitrator was without the power to clarify his award, and the company makes an

unsubstantiated and baseless claim that the arbitrator engaged in improper *ex parte*

communication with the Union. [See Answer; SOF ¶ 14.][2]

## III.    ARGUMENT

### A.    Because Verizon Failed to Bring a Timely Action to Vacate the Arbitration Award, the Company Has Waived Its Right to Plead Defenses and Counterclaims That Could Have Supported Such a Vacatur Action, so the Award Must Be Confirmed.

Having failed to bring a timely challenge to the arbitrator's clarified award — an

award that the arbitrator was plainly empowered to make, see infra Part III(B) — Verizon

cannot now raise challenges that could have been raised in a timely vacatur action.  The

---

[2] Though the Union's counsel has asked  Verizon's counsel on a number of occasions to explain the basis of
the allegation of *ex parte* communication, Verizon's counsel has steadfastly refused to answer this query.

Union is therefore entitled to summary judgment in its favor confirming the clarified arbitration award.

> 1.     Courts Uniformly Hold That an Employer's Failure to File a Timely Action to Vacate an Arbitration Award Estops the Employer from Challenging the Validity of the Award in a Subsequent Action.

This Court has squarely addressed the present issue in several prior cases, holding that an employer is estopped from asserting claims or defenses challenging the validity of a labor arbitration award when that employer failed to bring those claims within the limitations period applicable to vacatur actions. Int'l Assoc. of Bridge, Structural & Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, 928 F. Supp. 83 (D. Mass. 1996) (Burtman Iron Works); Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers, Local Union No. 6 v. Thermo-Guard Corp., 880 F. Supp. 42 (D. Mass. 1995) (Thermo-Guard). Citing First Circuit precedent, this Court has plainly stated:

> Failure to bring a vacatur action within the limitation period extinguishes the right of a party to plead defenses and counterclaims in a confirmation action that could have served to support the vacatur action.

Burtman Iron Works, 928 F. Supp. at 86 n. 2, citing Derwin v. General Dynamics Corp., 719 F.2d 484, 489 (1st Cir. 1983).

This simple rule is amply supported and uniformly followed by federal courts in other jurisdictions. See, e.g., Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998) (agreeing with determination that "a defendant's failure to move to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award") (citations omitted); Serv. Employees Int'l Union Local 36, AFL-CIO v. City Cleaning Co., 982 F.2d 89, 93 (3d Cir. 1992) (finding that court was

5

precluded from deciding defendant's argument "that the settlement of the unfair labor

practice charges filed with the NLRB renders the grievance committee's report and award

unenforceable" because defendant "failed to raise this issue in a timely motion to vacate,

modify or correct the grievance committee's award."); Int'l Longshoremen's Ass'n, AFL-

CIO v. Cataneo Inc., 990 F.2d 794, 800 (4th Cir. 1993) (finding that a party may not "sit

back with impunity until faced with a motion in federal court and assert a defense it could

have raised . . . in a [timely] motion to vacate."); Prof'l Adm'rs, Ltd. v. Kopper-Glo Fuel,

Inc., 819 F.2d 639, 642 (6th Cir. 1987) (agreeing with other circuit courts' conclusion that

failure to raise defenses to an arbitration award within the prescribed time period for

moving to vacate precludes that party from raising those defenses in an action to confirm)

(citations omitted); Plumbers' Pension Fund, Local 130, U.A. v. Domas Mech.

Contractors, Inc., 778 F.2d 1266, 1268 (7th Cir. 1985) (finding that "[s]ince the

company's defense to the award's enforcement involves an attack . . . the company could

have made in an action to vacate the award," the company was precluded "from seeking

affirmative relief in a subsequent action to enforce the award.") (citations omitted);

Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc., 857 F.2d 1235, 1237-38 (8th Cir.

1988) ("The authorities agree that a party may not assert a defense to a motion to confirm

that the party could have raised in a timely motion to vacate, modify, or correct the

award.") (citations omitted); Bhd. of Teamsters Local 70 v. Celotex Corp., 708 F.2d 488,

490 (9th Cir. 1983) ("[A]n unsuccessful party at arbitration who did not move to vacate

the award within the prescribed time may not subsequently raise, as affirmative defenses

in a suit to enforce the award, contentions that it could have raised in a timely petition to

vacate the award."); Int'l Bhd. of Elec. Workers, Local Union No. 969 v. Babcock &

6

Wilcox, 826 F.2d 962, 966 (10th Cir. 1987) ("[C]ourts have uniformly held that a

defendant's failure to move to vacate the arbitration award within the prescribed time

period precludes it from seeking affirmative relief in a subsequent action to enforce the

award.") (citations omitted).

As is demonstrated below, infra part III(A)(2), the undisputed facts of this case

establish that Verizon failed to raise its objections to the validity of the clarified arbitration

award within the appropriate limitations period.  Because it failed to challenge the validity

of the award in a timely fashion, Verizon is thereby estopped from raising such a challenge

as a defense in these proceedings.

> 2.     The Appropriate Limitations Period Applied to this Case Requires
>        Vacatur Actions to be Instituted within Thirty Days, and Having
>        Failed to Challenge the Award within That Time Period, Verizon is
>        Now Estopped from Raising Such a Challenge as a Defense.

The Union brought this case pursuant to section 301 of the Labor Management

Relations Act.  As the First Circuit has recognized, "the timeliness of a section 301 suit . . .

is to be determined, as a matter of federal law, by reference to the appropriate state statute

of limitations."  Derwin, 719 F.2d at 487, citing Int'l Union, UAW v. Hoosier Cardinal

Corp., 383 U.S. 696, 704-705, 86 S. Ct. 1107, 1113, 16 L. Ed. 2d 192 (1966).  See also

Burtman Iron Works, 928 F. Supp. at 85; Thermo-Guard, 880 F. Supp. at 46-48.  In this

case, the appropriate limitations period applicable to Verizon's challenge to the validity of

the clarified arbitration award is borrowed from the Massachusetts statute, which requires

motions to vacate labor arbitration awards to be brought within thirty (30) days.  Mass.

Gen. Laws ch. 150C, § 11; <u>see Derwin</u>, 719 F.2d at 487; <u>Burtman Iron Works</u>, 928 F. Supp. at 85; <u>Thermo-Guard</u>, 880 F. Supp. at 46-48.[3]

The <u>Thermo-Guard</u> case is particularly instructive to this case, as it dealt with a nearly identical issue.  In that case, an employer, though put on notice of a labor arbitration hearing, failed to attend the hearing.  880 F. Supp. at 44.  The contractually constituted Trade Board heard the case anyway, found against the employer, and served its award on the employer via certified mail.  <u>Id.</u>  The employer did not file a motion to vacate within the appropriate limitations period, and when the union filed a section 301 action to confirm the award, the employer answered and counterclaimed that the Trade Board did not have jurisdiction over the matter.  <u>Id.</u> at 46-47.

In a well-reasoned opinion, Judge Wolf held that Massachusetts's 30-day statute of limitations applied to the case and barred the employer from raising its jurisdictional defense.  <u>Id.</u> at 46-48.  In so holding, Judge Wolf noted that the Massachusetts Supreme Judicial Court had specifically held that the 30-day statute of limitations applied to all motions to vacate, even those challenging an arbitrator's jurisdiction.  <u>Id.</u> at 47, <u>citing</u> <u>Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Authority</u>, 491 N.E.2d 1053 (Mass. 1986).  Judge Wolf also noted that the First Circuit had similarly applied Puerto

---

[3] Mass. Gen. Laws ch. 150C, § 11 states, in pertinent part:

   (a) Upon application of a party, the superior court shall vacate an award if:-
     (1)  the award was procured by corruption, fraud or other undue means;
     (2)  there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
     (3)  the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law;
     . . . . .
   (b) An application under this section shall be made within thirty days after delivery of a copy of the award to the applicant, provided that, if such application is based upon a claim of corruption, fraud or other undue means it shall be made within thirty days after such grounds are known or should have been known.
     . . . . .

Rico's 30-day statute of limitations to a vacatur action alleging that the arbitrator exceeded

his authority. Thermo-Guard, 880 F. Supp. at 47-48, citing Posadas de Puerto Rico

Assoc., Inc. v. Asociacion de Empleados de Casino de Puerto Rico, 873 F.2d 479, 483 (1st

Cir. 1989).

As in the Thermo-Guard case, Verizon has here raised the defense that the

arbitrator was without jurisdiction to issue his clarified award, relying on the all-but-dead

doctrine of *functus officio*. See infra part III(B) (demonstrating the arbitrator's

unmistakable authority to clarify his award). Because such a jurisdictional contention can

and must be raised in a motion to vacate, and because Verizon failed to file such a motion

within the 30-day statute of limitations, Verizon is now estopped from raising this

jurisdictional argument as a defense to the Union's action to confirm the award. Similarly,

Verizon's claim of *ex parte* communication, even if substantiated, amounts to an

allegation of "misconduct prejudicing the rights of [a] party," Mass. Gen. Laws ch. 150C,

§ 11(a)(2), and therefore must also be raised in a motion to vacate. Having failed to timely

raise its allegation of arbitral misconduct, Verizon is similarly estopped from raising this

allegation as a defense to the Union's present action.

Based on the foregoing, Verizon has waived its right to challenge the arbitrator's

clarified award, and the Court must therefore grant the Union summary judgment in this

matter and confirm the clarified award as the Union has requested.

B.    The Arbitrator Had the Unmistakable Authority to Clarify His Award, so
      the Award Must Be Confirmed.

As demonstrated above, supra part III(A), Verizon has waived its right to challenge

the arbitrator's authority to clarify his award, so it is unnecessary for the Union to establish

that the arbitrator had such authority. However, because the arbitrator's authority to

clarify his award is so well-established, the Union offers this analysis to foreclose that

challenge and to support its request for fees and costs, infra part III(C).[4]

> 1.    The Arbitrator Had the Unmistakable Authority to Clarify His
>        Ambiguous Award.

It is unmistakable that, even at common law, arbitrators have always enjoyed the

authority to clarify their awards to correct mistakes therein.  See, e.g., First Nat'l Bank of

Clarion v. Benneman, 7 A. 910, 912 (Pa. 1886) ("It is unnecessary to cite any of the

numerous authorities in which it has been held that mistakes of arbitrators and referees

may be corrected either by themselves or by the courts."), cited in La Vale Plaza, Inc. v.

R.S. Noonan, Inc., 378 F.2d 569, 573 (3d Cir. 1967).  Though an arbitrator is not free to

rehear or redetermine the merits of a case, courts have consistently recognized an

arbitrator's ability to "clarif[y] an ambiguous award when the award fails to address a

contingency that later arises or when the award is susceptible to more than one

interpretation."  Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers

Local 24, 357 F.3d 546 (6th Cir. 2004), citing Green v. Ameritech Corp, 200 F.3d 967 (6th

Cir. 2000) (Ameritech Corp.); Glass, Molders, Potter, Plastics & Allied Workers Int'l

Union, ALF-CIO, CLC, Local 182B v. Excelsior Foundry Co., 56 F.3d 844 (7th Cir.

1995) (Excelsior Foundry).  See also Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985

(3d Cir. 1997).

---

[4] As noted above, supra n. 2, Verizon has refused to explain to the Union and has yet to disclose to the Court
the basis for its allegation of *ex parte* communication, rendering the Union unable to defend against this
unsubstantiated charge.  As demonstrated above, supra part III(A), Verizon has waived its right to challenge
the clarified award based on any arbitral misconduct.  However, the undisputed facts demonstrate that
Verizon was given and accepted the opportunity to address the arbitrator regarding the Union's request for
clarification of the award, [see Ex. 5], effectively rendering any alleged *ex parte* communication harmless.
See Grieco v. Meachum, 533 F.2d 713, 719 (1st Cir. 1977) (applying harmless-error analysis where alleged
*ex parte* contact caused no cognizable harm), cert. denied, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135
(1976); United States v. DeLeo, 422 F.2d 487, 499 (1st Cir. 1970) (same), cert. denied, 397 U.S. 1037, 90
S.Ct. 1355, 25 L.Ed.2d 648 (1970).

Mindful of the strong authority within this circuit and in other jurisdictions, the First Circuit has recognized the inherent power of an arbitrator to "interpret or amplify his award." Red Star Express Lines v. Int'l Brotherhood of Teamsters, Local 170, 809 F.2d 103, 106 (1st Cir. 1987) (internal citation omitted). Moreover, this Court has itself recognized that the "proper approach" to resolving "ambiguities and uncertainties of labor arbitration awards . . . is to resubmit the award to its author for clarification." Teamsters Local No. 25 v. Penn Transp. Corp., 359 F. Supp. 344, 350 (D. Mass. 1977) citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960) (part of the Steelworkers trilogy).

Here, the arbitration award plainly required clarification because of the different interpretations espoused by the parties. See Ex. 3 & 5. The parties had a clear misunderstanding of which "day" the arbitrator intended to be converted to leave without pay. Since the arbitrator made no factual finding as to how the company had treated the day of funeral leave, the word "day" in his award could refer to either the funeral-leave day or the day of suspension. The Union interpreted the arbitrator's findings – i.e., that "discipline is not warranted" and that the suspension was "not for just cause" – to mean that the grievant should be made whole for the day of suspension. Indeed, it is clear from the arbitrator's clarification this is exactly what he intended, and he clarified his award for the sole purpose of making his intention clear. See Daniewicz v. Thermo Instrument Systems, Inc., 992 S.W.2d 713 (Tx. Ct. App. 1999) ("Of course, the best source to determine the intention of the original award remains the arbitration panel itself."). The arbitrator did not rehear the case or change his findings, and he made no redetermination of the merits of the case. The arbitrator therefore acted well within his authority.

11

Verizon's refusal to recognize the arbitrator's clarified award is plainly motivated by the company's desire to avoid paying the grievant the backpay he is entitled to, despite the arbitrator's finding that the company disciplined Mr. Ouellette without just cause. It is disingenuous for Verizon to bury its head in the sand and ignore the arbitrator's clarification so it can adhere to its own incorrect interpretation of the original award. As the arbitrator acted within his authority, his clarified award must be confirmed.

2.      The Doctrine of *Functus Officio* Is Inapplicable to this Labor Arbitration.

Despite the overwhelming weight of authority supporting an arbitrator's ability to clarify his own award, Verizon will undoubtedly rely on the doctrine of *functus officio* to argue that this arbitrator had no such authority. Such reliance is misplaced, as the doctrine is inapplicable to this case and is possibly inapplicable in the entire labor arbitration context.

The doctrine of *functus officio*, on which Verizon relies, was a common law construct that precluded an arbitrator from "vacating, modifying, supplementing, or correcting his award." Courier-Citizen Co. v. Boston Electrotypers Union No. 11, Int'l Printing & Graphic Communications Union of North America, 702 F.2d 273 278 (1st Cir. 1983). As Judge Posner has explained, "[t]he doctrine originated in the bad old days when judges were hostile to arbitration and ingenious in hamstringing it." Excelsior Foundry, 56 F.3d at 846. The doctrine is no longer particularly well-accepted.

The First Circuit has recognized that "[i]n fashioning a substantive law of labor relations pursuant to section 301 of the Labor Management Relations Act, . . . the federal courts have refused to apply the strict common law rule of *functus officio*." Id. at 279 (internal citation omitted). As then Circuit Judge Breyer stated when confronting the

12

doctrine, "[s]trong authority in this circuit (and in other jurisdictions) holds that a labor arbitrator may, for example, 'interpret or amplify' his award, *functus officio* notwithstanding." Red Star, 809 F.2d at 106. "Today, riddled with exceptions, [the *functus officio* doctrine] is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain." Excelsior Foundry, 56 F.3d at 846 (recognizing a clarification or completion exception to the *functus officio* doctrine that seems to swallow the rule), citing Red Star, 809 F.2d at 106. See also Red Star, 809 F.2d at 108 (Brown, J., concurring) ("*[F]unctus officio* and all the other judgemade hostilities to arbitration went out with Lincoln Mills and, if need be, the [Steelworkers] trilogy and the great flood of following cases in all the circuits."). See also Ameritech Corp, 200 F.3d at 977 (recognizing the need for an arbitrator's "clarification of an ambiguous award when the award . . . is susceptible to more than one interpretation").

As explained above, supra part III(B)(1), the two different days at issue in this arbitration case – i.e., the funeral leave day and the day of suspension – render the arbitrator's award ambiguous at best. The fact that the first sentence of the award describes the suspension and the second sentence refers to the "day" being converted to leave without pay does not signify the arbitrator's intent to deny the grievant a make-whole remedy. Indeed, the arbitrator found that the discipline was not warranted, so it would be incongruous for him to deny the standard remedy of make-whole relief for an unjust suspension.[5] For that reason, notwithstanding the all-but-dead doctrine of *functus officio*, the arbitrator acted well within the exceptions to that doctrine for clarifying and interpreting an ambiguous labor arbitration award.

---

[5] See Elkouri & Elkouri, How Arbitration Works 580-583 (5th ed. 1997) (discussing factors in fashioning arbitral remedies); Bornstein et al., Labor and Employment Arbitration § 14.04 (2d ed. updated through April 2004) (same).

In sum, the arbitrator acted well within his authority to clarify his ambiguous

award, so the Union is entitled to summary judgment in its favor confirming the clarified

award and ordering Verizon to make the employee whole, with interest.

C.      Because Verizon Has Refused to Comply with an Enforceable Arbitration
        Award without any Justification, the Court Should Exercise Its Discretion
        to Grant Attorneys' Fees and Costs to the Union.

Verizon's challenge to the arbitrator's clear authority to resolve the parties'

contractual dispute violates the First Circuit's repeated admonition that losing parties to an

arbitration may not seek redress in the courts from a decision that was appropriately

rendered.  Verizon's audacious flouting of this principle warrants an award of costs and

attorney's fees to the Union.

The First Circuit has held that attorneys' fees are appropriately granted when a

party, without justification, refuses to comply with an enforceable arbitration decision,

thus forcing the prevailing party to incur the costs associated with an action to compel

enforcement.  See, e.g., Courier-Citizen Co., 702 F.2d at 282; Crafts Precision Industries,

Inc. v. Lodge No. 1836 of District 38, Int'l Assoc. of Machinists & Aerospace Workers,

889 F.2d 1884 (1st Cir. 1989); see also Posadas de Puerto Rico Assoc., Inc. v. Asociacion

de Empleados de Casino de Puerto Rico, 821 F.2d 60, 61 (1st Cir. 1987) (noting that "with

exasperating frequency, [we are] confronted by challenges to such decisions brought by

parties who are apparently still under the delusion that, as a matter of course, the losing

party is entitled to appeal any adverse ruling by an arbitrator").  Indeed, the First Circuit

has held that the District Court *abused* its discretion when it *failed* to award fees in a case

where the employer put forth an utterly baseless defense to a motion to confirm.  Local

14

285, Serv. Employees Int'l Union v. Nonotuck Resource Assoc., Inc., 64 F.3d 735 (1st

Cir. 1995).

Adhering to this well-elucidated principle, this Court has, on dozens of occasions,

levied attorney's fees against a party that frivolously prompted the filing of a motion to

vacate or confirm an arbitration award.  See, e.g., Painters & Allied Trades Dist. Council

No. 35 v. Ipswich Bay Glass Co., 2004 WL 1212078 (D. Mass. June 2, 2004); Local 285,

Serv. Employees Int'l Union, AFL-CIO v. Parnash, Inc., 2000 WL 341053 (D. Mass. Mar.

27, 2000); Thermo-Guard Corp., 880 F. Supp. 42 ; Cliftex Corp. v. Local 377, New

England Regional Joint Bd. Amalgamated Clothing & Textile Workers Union, 625 F.

Supp. 903 (D. Mass. 1986).  In the nearly identical Thermo-Guard case, discussed supra

part III(A)(2), this Court imposed fees against an employer that failed to file a timely

motion to vacate the award and then impermissibly challenged the award only after the

union was forced to bring an action to confirm the award.  880 F. Supp. at 48-49.  The

Court held that, even putting aside the timeliness issue, the union was entitled to

reasonable fees and costs because the employer failed to assert any rational argument for

its refusal to abide by the arbitration decision.  Id.

In this case, Verizon failed to make a timely challenge to the arbitrator's

award.  Rather, the company ignored the clarified award in the vain hope that it

could get away with avoiding its backpay obligations.  Verizon's stubborn refusal

to pay Mr. Oullette his backpay, even after the arbitrator made clear that it was his

intention for Verizon to do so, forced the Union to bring this action to confirm the

award and to expend the fees and costs related to such an action.  Furthermore,

putting aside the timeliness issue, Verizon's reliance on the barely existent *functus*

*officio* doctrine, which is plainly inapplicable to the arbitrator's clarified award in this case, amounts to an unjustified and unsupportable challenge to the finality of the arbitrator's ultimate award.

The Union therefore respectfully requests that this Court grant the Union its reasonable fees and costs expended in bringing this case to challenge Verizon's failure to comply with the final arbitration award and its frivolous claims in defense of its actions.

## IV.    CONCLUSION

For the foregoing reasons, the Union respectfully requests that this Court enter summary judgment in its favor confirming the clarified arbitration award; issue an order requiring the defendant Verizon to pay the grievant the back pay owed to him pursuant to the arbitration award, plus interest from the date of the arbitration award; and order Verizon to pay the Union's reasonable attorneys' fees and costs.

Respectfully submitted,

LOCAL 2322, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

By its attorneys,

Dated:  April 15, 2005              ___s/Alfred Gordon_____
                                    Harold L. Lichten, BBO # 549689
                                    Alfred Gordon, BBO # 630456
                                    Pyle, Rome, Lichten, Ehrenberg &
                                         Liss-Riordan, P.C.
                                    18 Tremont St., Ste. 500
                                    Boston, MA 02108
                                    (617) 367-7200

## CERTIFICATE OF SERVICE

   I hereby certify that a true copy of the above document was served on the attorneys of record for each party by   U.S. Mail     on April 15, 2005.
                   (method)


               s/Alfred Gordon
              Alfred Gordon