UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LOCAL 2322, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

        Plaintiff,

v.

VERIZON, INC.,

        Defendant.

Civil Action No. 04-12490 RWZ

## VERIZON NEW ENGLAND INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant Verizon New England Inc. (the "Company") hereby submits this memorandum of law in support of its motion for summary judgment in this action brought by Local 2322, International Brotherhood of Electrical Workers (the "Union"). This case involves the issuance of an award by an arbitrator pursuant to the collective bargaining agreement between the parties, which the arbitrator later purported to alter in a letter at the Union's behest after he no longer had any lawful authority over the dispute. While the Union attempts to portray the arbitrator's reconsideration of his award as a "clarification," it was, in fact, an impermissible reconsideration of the substance of the award. Having completed and issued the award, the arbitrator was *functus officio* and had no authority to alter that award. Because the Union seeks to enforce the improper "clarification" letter and not the award itself in this proceeding, summary judgment for the Company should be granted.

## FACTS

### The Parties and Their Collective Bargaining Agreement

At all relevant times, the Company and the Union have been parties to a collective bargaining agreement (the "Contract"). Article G9 of the Contract provides for arbitration of certain grievances between the parties. Article G9A provides for Expedited Arbitration of certain other grievances, including those relating to the suspension of an individual employee. See Articles G9 and G9A of the Contract, attached the Affidavit of Stephen J. Lowrie ("Lowrie Aff.) at Exhibit A. The expedited procedures, outlined in Article G9A.04, specify that the arbitration shall be conducted before a single arbitrator (also called an "umpire"). See Lowrie Aff., Exhibit A. Article G9A.04(i) states that "[t]he decision of the umpire will settle the grievance, and the Company and the Union agree to abide by such decision." Id. As part of the expedited arbitration process, the parties maintain a panel of five designated permanent umpires to hear all cases. See Lowrie Aff., Exhibit A, at G9A.03. When a demand for arbitration is submitted by the Union under the expedited provisions, the American Arbitration Association ("AAA") assigns one of the permanent umpires to hear the matter. Id.

The dispute underlying the instant action involved the Company's suspension of employee Thomas Ouellette ("Ouellette"), which the Union grieved and filed for arbitration under the expedited procedures.

### Facts of the Ouellette Suspension Arbitration

The facts presented at the Ouellette arbitration were as follows: On December 2, 2002, Ouellette took a day off to attend the funeral of his wife's grandfather. He was not paid for the day off. Ouellette's supervisor, Terence Brown ("Brown"), claimed that he never gave Ouellette authorization to take the day off. See Opinion and Award In the Matter of IBEW, Local 2322 and Verizon, AAA No. 11 E 300 02702 03, Thomas Ouellette Suspension (June 4, 2004) (Fraser, Arb.) (the "Award"), Lowrie Aff., at Exhibit B. Ouellette claimed that Brown had authorized him to take

B3011432.1                                - 2 -

the day off. Id. When Ouellette returned to work on December 3, 2002, he was suspended for three days for having taken December 2nd off without authorization. Id. The three days of Ouellette's suspension were December 3rd, 4th and 5th. See Company Arbitration Exhibit 1, Ouellette 2002 Attendance Record, Lowrie Aff. at Exhibit C. The Union grieved the suspension. During the grievance process, the Company reduced the suspension to one day, December 3rd, and paid Ouellette back for the other two days of suspension. See Lowrie Aff., ¶ 5. Nevertheless, the Union proceeded to arbitration for the remaining day.

The Union filed a demand for arbitration with AAA pursuant to Article G9A of the Contract. See Joint Arbitration Exhibit 2, Lowrie Aff., at Exhibit D. In that demand, the Union stated that the nature of the dispute was the "one day suspension & letter in personnel folder. Thomas Ouellette." Id. The relief sought by the Union was that the Company "cease and desist, rescind suspension & make employee whole." Id. Arbitrator Bruce Fraser (the "Arbitrator" or "Fraser"), a member of the permanent panel, was selected to hear the dispute. See AAA Notice of Hearing, Lowrie Aff., at Exhibit E. As a member of the expedited panel, the Arbitrator had previously heard numerous suspension cases between these parties. See Lowrie Aff., at ¶¶ 8-9.[1]  On April 30, 2004, the parties appeared before the Arbitrator. See Lowrie Aff., at Exhibit B.

The issue agreed upon by the parties and submitted to the Arbitrator was, "Was the one-day suspension given to Thomas Ouellette for just cause? If not, what shall be the remedy?" See Lowrie Aff., at Exhibit B, at p. 1. The pay treatment for December 2, 2002, the day Ouellette took off to attend the funeral, was not at issue in the arbitration. The Union did not grieve the fact that Ouellette was not paid for that day. See Lowrie Aff., ¶ 6. Even if the Union had grieved the issue, that grievance could not have been arbitrated under the expedited arbitration article, Article G9A, because that provision governs only disciplinary actions. See Lowrie Aff., at Exhibit A, at G9A.02.

---

[1] In addition to his experience handling expedited arbitrations, the Arbitrator had also served on numerous occasions as arbitrator for the parties in cases pursuant to Article G9 of the Contract. See Lowrie Aff., at ¶ 9.

The issue of Ouellette's pay treatment was not argued by either party during the hearing, nor was any evidence presented in that regard. See Lowrie Aff., ¶ 10.

**Arbitration Award**

On June 4, 2004, the Arbitrator issued his Award. See Lowrie Aff., at Exhibit B. It stated:

AWARD

The one day suspension given to Thomas Ouellette was not for just cause. The day shall be converted to leave without pay and the discipline removed from his file.

See Lowrie Aff., at Exhibit B, at p. 5.

The Company duly implemented the Award by converting the pay coding for December 3, 2002 from "suspension" to "unpaid absence" (i.e., leave without pay), and removing the discipline from Ouellette's file. See Lowrie Aff., ¶ 11.

**The Union Objects to Award**

Shortly after the Award was issued, the Union, through its Assistant Business Agent, Michael Gallagher ("Gallagher"), contacted Stephen Lowrie ("Lowrie"), Company Labor Relations Senior Specialist. Gallagher told Lowrie that the Union believed the Award ordered the Company to pay Ouellette back for one day's lost pay, and demanded payment. See Lowrie Aff., ¶ 12. Lowrie responded that the Award did not provide for back pay and that the Company would not pay. See id.

Rather than move in federal court to vacate the Award, the Union, on June 24, 2004 via its counsel, Harold Lichten ("Lichten"), sent a letter to the Arbitrator stating that it believed the Award ordered the Company to give back pay to Ouellette. See June 24, 2004 Union Letter, Affidavit of Alicia Alonso Matos ("Matos Aff."), at Exhibit A. In its letter, the Union cited to the language of the award and stated "[i]t seems absolutely clear that the 'day' which you hold should be 'converted to leave without pay' is the day that Mr. Ouellette attended the funeral." The Union further claimed that the Company's interpretation of the Award, that the suspension day was to be converted to a day of leave without pay, was "both a disingenuous and patently absurd interpretation" of the decision.

Id. Having minced no words concerning its view of the matter, the Union then requested that the Arbitrator "cla rif[y]" the meaning of his Award. Id.[2]

The Company saw things differently. The plain language of the Award stated that the suspension should be converted to leave without pay. The Award stated, "The one day suspension given to Thomas Ouellette was not for just cause. The day shall be converted to leave without pay." (Emphases added). The only possible interpretation of those two sentences was that "the day" mentioned in the second sentence referred back to "the one day suspension" in the first sentence. Moreover, the suspension day was the only day at issue in the case. The day Ouellette took off to attend the funeral was not grieved, not part of the Union's arbitration demand, and not part of the stipulated issue at hearing. Nor was that day paid. Thus, when the Arbitrator had stated that the day shall be "converted" to a day without pay, the funeral day the Union contended that the Arbitrator was referring to could not possibly have been at issue, because it was already a day without pay. Something cannot be converted to what it already is. In effect, the Union was claiming that the Arbitrator was saying that "the day of leave without pay shall be converted to a day of leave without pay." Consequently, the Company found no ambiguity in the language of the Award.

The Company also thoroughly reviewed the Arbitrator's Opinion, which supported the plain language of the Award. The reasoning for the Award provided in the Opinion was what labor practitioners refer to as a "split-the-baby" decision. The Arbitrator repeatedly stated in his discussion that he found both parties to be at fault.

> "But for the poor communication of the two principal players in the grievance -- Ouel[l]ette and Brown -- there is every reason to believe Ouellette would have been given the day off on Monday, December 2, 2002."

See Lowrie Aff., at Exhibit B, p. 4.

---

[2] The Company has evidence that prior to the issuance of Lichten's letter, Arbitrator Fraser told a Labor Relations representative that the Union had contacted him *ex parte* to complain that it was dissatisfied with his Award. Because the Court has reserved this issue pending the outcome of the parties' summary judgment motions, the Company will not address it at this time.

> "Both principal player[s] were at fault here and discipline is not warranted. Rather, the day should be converted to leave without pay and the discipline removed from the grievant's file."

See Lowrie Aff., at Exhibit B, p. 5.

Thus the Arbitrator gave only partial relief to the Union. Because both the Company supervisor *and* the grievant were "at fault," the Arbitrator rescinded the discipline, but declined to award the grievant back pay for the day.

Nothing in the parties' Contract or in law prohibited the Arbitrator from so ruling. The Contract does not dictate that back pay must be awarded if the arbitrator determines that the Company did not have just cause for its discipline. Id. Had the parties wished to require that back pay be awarded in all cases where a suspension is determined not to be for just cause, they could have done so.[3] And the stipulated issue in the case left it to the Arbitrator's discretion to determine a remedy. See Lowrie Aff., at Exhibit B, p. 1 ("If not, what shall be the remedy?").

The Arbitrator in this matter is an experienced umpire who has presided over numerous suspension cases involving this Contract and between these parties. See Lowrie Aff., ¶ 9. The Arbitrator knows full well how to order a make whole remedy where he finds lack of just cause for a suspension, when he chooses to do so:

- "The suspension given to Daniel Roy was not for just cause. He shall be given a letter of warning and be made whole for the day of suspension." In the Matter of the Arbitration between IBEW, Local 2322 and Verizon, AAA No. 11 E 300 02393 01 (Jan. 24, 2002) (Fraser, Arb.) (see Lowrie Aff., at Exhibit G).

- "The one-day suspension to Dennis Giannotti was not for just cause. It shall be reduced to a Letter of Warning and the grievant shall be made whole for all lost wages and benefits." In the Matter of the Arbitration between

---

[3] In the contract between the Company and the Communications Workers of America ("CWA") in New York, the parties did just that. Under the "Reinstatement" provision in that contract, the parties agreed that "[i]n a suspension case, the employee shall receive his basic weekly wage rate for the time lost less the amount of any unemployment compensation received or receivable and any amount paid to or receivable by the employee as wages in other employment." See Agreement between Verizon New York Inc. and Telesector Resources Group, Inc. and Empire City Subway Company (Limited) and Communication Workers of America AFL-CIO District One, Article 10.03(2), Lowrie Aff., at Exhibit F.

> International Brotherhood of Electrical Workers, Local 2322 and Verizon New England, AAA No. 11 E 300 00368 2 (May 4, 2002) (Fraser, Arb.) (see Lowrie Aff., at Exhibit H).

- "The 20-day suspension of Donald Campbell was not for just cause. He shall be made whole for all lost wages and benefits." In the Matter of the Arbitration between IBEW, Local 2322 and Bell Atlantic, AAA No. 11 E 300 0799-99 (Oct. 12, 1999) (Fraser, Arb.) (see Lowrie Aff., at Exhibit I).

As to the Union's claim that rescinding a suspension without awarding back pay is "patently absurd," the Company's experience is that this Union frequently offers rescission of suspensions without back pay as a resolution of grievances. See Lowrie Aff., ¶¶ 13-14. On occasion, the Company agrees to such a settlement. See Lowrie Aff., ¶ 15. For all of these reasons, the Company refused to accede to the Union's position concerning the remedy for Ouellette.

The Company opposed reconsideration of the matter by Fraser based on his lack of authority. On July 1, 2004 the Company, through counsel, issued a letter to Fraser responding to the Union's purported request for clarification. It read: "The Arbitrator has no authority to alter his decision in this matter, once rendered. In writing its letter, the Union's agenda is clearly not to request clarification of the Arbitrator's award, which is unambiguous, but to request reconsideration because it is dissatisfied with the result." See July 1, 2004 Company Letter, Matos Aff., at Exhibit B.

On August 10, 2004, Fraser convened a conference call among himself and counsel for both parties. Fraser treated the call as a reconvened hearing. He asked questions and received answers. Fraser asked counsel if Ouellette had received pay for the day he attended the funeral. See Matos Aff., ¶ 3. Both counsel responded that he had not. Id. Fraser asked if Ouellette had received pay for the day he was suspended. Id. Both counsel responded that he had not. Id. After hearing this evidence, Fraser stated that he had intended to award Ouellette back pay and would send out a letter to the parties confirming this. Id.

B3011432.1

- 7 -

**The Arbitrator Issues Clarification Letter**

On August 16, 2004, the Company received a letter from the Arbitrator addressed to AAA, as follows:

> In response to your letter of July 1, 2004 and our joint telephone call, I clarify my award for Case 11 E 300 02702 03 (21-03) as follows:
>
> The one day suspension give[n] to Thomas Ouellette was not for just cause. He shall be made whole for all lost wages and benefits arising from this suspension and the discipline shall be removed from his file.
>
> The day of the funeral shall be treated as day of leave without pay.
>
> Sincerely,
>
> Bruce Fraser
> Arbitrator

See August 16, 2004 Letter of Arbitrator Fraser, Lowrie Aff., at Exhibit J.

The Company considered Fraser's attempt to reverse the Award as ineffective and unbinding because, after issuing the Award, Fraser had no authority to alter it. The Company was bound by the Award and complied with it. However, the Company did not believe itself bound by Fraser's subsequent letter, and refused to pay back a day's wages to Ouellette. Thus, the Union filed this suit.

## ARGUMENT

Where, as here, an arbitrator has issued his Award on a grievance, that decision is final and his authority over that grievance is exhausted. See Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 278 (1st Cir. 1983) ("*functus officio*" doctrine). It is the province of the Court under Section 301 of the Labor Management Relations Act to determine whether the arbitrator's action was *functus officio*. Id. The Court also has the authority under Section 301 to enforce properly issued arbitration awards, but that is not at issue here. See, e.g., United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

**I.    The Company Has Fully Complied With the Award Issued in this Matter.**

The Award here stated:

> The one day suspension given to Thomas Ouellette was not for just cause. The day shall be converted to a leave without pay and the discipline shall be removed from his file.

See Lowrie Aff., at Exhibit B, p. 5.

The plain language of the Award required the Company to convert the suspension day to a day of leave without pay, and to remove the discipline from Ouellette's file. It is undisputed that the Company did both of these things. The Company had no desire to move to vacate the Award, and took no steps to do so. The Union, although clearly dissatisfied with the Award, also took no steps to have the Award vacated. Nor does the Union seek to enforce the Award. It apparently recognizes that the Company has fully complied with the Award. Thus, this case does not present the typical enforcement action under Section 301. Rather, the entire dispute centers on events that occurred after the Award was issued.

## II. *Functus Officio* Doctrine

Once Fraser issued the Award, he was *functus officio* and had no power to act further in regard to that arbitration. "[W]hen 'arbitrators have executed their award and declared their decision they are *functus officio* and have no power or authority to proceed further.'" Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 278 (1st Cir. 1983) (citing Mercury Oil Refining Co. v. Oil Workers Int'l Union, 187 F.2d 980, 983 (10th Cir. 1951)). See also McClatchy Newspapers v. Central Valley Typographical Union No. 46, 686 F.2d 731, 734 (9th Cir. 1982) ("'It is a fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration'") (citation omitted). "The reason for [the *functus officio*] doctrine [is] 'the potential evil of outside communication and unilateral influence which might affect a new conclusion.'" Domino Group, Inc. v. Charlie Parker Memorial Found., 985 F.2d 417, 420 (8th Cir. 1993) (citing Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 332 (3d Cir. 1991)).

There are only three limited exceptions to the *functus officio* doctrine. An arbitrator can (1) correct a mistake which is apparent on the face of his award; (2) complete an arbitration if the award is not complete; and (3) clarify an ambiguity in the award. See, e.g., McClatchy Newspapers, 686 F.2d at 734 n.1; Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 332 (3d Cir. 1991); Red Star Express Lines v. International Bhd. of Teamsters, Local 170, 809 F.2d 103, 106 (1st Cir. 1987). Here, the Union argues that the Award was ambiguous and as such falls into the third exception.[4]

An award falls into the ambiguity exception of the *functus officio* doctrine only when it is "patently ambiguous." Oil, Chem. & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Texas, Inc., 677 F.2d 492, 495 (5th Cir. 1982). E.g., Courier-Citizen Co., 702 F.2d 273, 278-80 (1st Cir. 1983) (arbitrator may reopen proceeding in which he had ordered back pay to "senior journeyman" in order to identify journeyman and specify amount of back pay). However, "once the court is presented with an unambiguous, enforceable award, the arbitrator's award must be upheld." Brown v. Witco Corp., 340 F.3d 209, 216 (5th Cir. 2003).

Where, as here, the arbitrator substantively alters his award in the guise of "clarification," the altered decision violates the *functus officio* doctrine and is invalid. See Courier-Citizen Co., 702 F.2d at 279; Domino Group, Inc. v. Charlie Parker Memorial Found., 985 F.2d 417, 420-21 (8th Cir. 1993); McClatchy Newspapers, 686 F.2d at 734; Colonial Penn, 943 F.2d at 333.

---

[4] In its Complaint and in its June 24, 2004 letter to Fraser, the Union confined itself to the argument that the Award was ambiguous. The Union has never taken the position that the Award contained a mistake on its face or that the Arbitrator failed to complete his Award. See Complaint at ¶ 9; Matos Aff., at Exhibit A. In any event, the first two exceptions to the *functus officio* doctrine could not apply here. The case law makes clear that in order for a matter to fall into the "mistake" exception, the mistake must be an error on the very face of the award, such as a calculation error. See, e.g., Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 332 (3d Cir. 1991) ("The exception for mistakes apparent on the face of the award is applied to clerical mistakes or obvious errors in arithmetic computation") (citing Local P-9, United Food & Commercial Workers v. George A. Hormel & Co., 776 F.2d 1393, 1394 (8th Cir. 1985). In order for the "incomplete" exception to apply, there must be an issue that was specifically put before the arbitrator, but that he failed to address. See Brown v. Witco Corp., 340 F.3d 209, 219 (5th Cir. 2003) (the incompleteness exception applies when "an issue which has been submitted . . . has not been completely adjudicated by the original award").

### III. The Company Was Not Obligated to Comply with Fraser's August 16, 2004 Letter, Which Was a Legal Nullity, Because Fraser Was *Functus Officio* Following the Issuance of his June 4, 2004 Award.

The Award issued by the Arbitrator on June 4, 2004 was final.[5] It left no issue unaddressed, nor was it incapable of application. Indeed, the Company did apply it by rescinding Ouellette's discipline and converting the suspension day to a day of leave without pay. Thus, the Arbitrator was *functus officio*, his authority in the matter exhausted. Any communication from Fraser regarding the Ouellette arbitration after the rendering of the Award had no legal force, and the Company had no obligation to comply therewith. Once the Award was issued, Fraser was no longer the Arbitrator. His "clarification" of the Award was no more binding on the Company than if the Union had asked the opinion of a college student, a newspaper reporter or a hot dog vendor.

This case presents a textbook example of the rationale of the *functus officio* doctrine, to protect the Arbitrator from being pressured to change his award by a dissatisfied party. In this case, the Union made no secret of its disdain for the Arbitrator's failure to award the grievant back pay. The Union's June 24, 2004 letter to Fraser stated that it was "absolutely clear" that what the Arbitrator meant was the opposite of what he said, and that a contrary reading was "disingenuous" and "patently absurd." See Matos Aff., at Exhibit A. In effect, the Union was telling Fraser that only a moron would not issue the "clarification" the Union sought. This is precisely the kind of bullying that coerces an arbitrator to reverse an Award.[6]

The Union's claim that the Award is ambiguous, and thus an exception to the *functus officio* doctrine, is untenable. Only if an award is <u>patently</u> ambiguous, on its face or in its implementation,

---

[5] Under Article G9A of the parties' Contract, the decision rendered by the arbitrator is final and there is no avenue provided for reconsideration of an award. Article G9A.04(i) states that "[t]he decision of the umpire will settle the grievance, and the Company and the Union agree to abide by such decision." See Lowrie Aff., at Exhibit A.

[6] The danger of *ex parte* communications is another fundamental concern of the *functus officio* doctrine. See Domino Group v. Charlie Parker Memorial Found., 985 F.2d 417, 420 (8th Cir. 1993); Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 332 (3d Cir. 1991). However, this issue has been reserved by the Court until after the resolution of these summary judgment motions.

B3011432.1

- 11 -

will it fall into the ambiguity exception of the *functus officio* doctrine and allow for clarification. In cases where the Court found an award to be ambiguous, there was a clear inability for the Award to be implemented absent some further clarification on the part of the arbitrator. In <u>Courier-Citizen Co.</u>, 702 F.2d 273 (1st Cir. 1983), the arbitrator ruled that a job should have been granted to the senior journeyman. At the time, the identity of the senior journeyman was not known, although it was expected that the outcome of another arbitration would supply the answer. Once it later became clear that the second arbitration did not, in fact, establish firmly the identity of the senior journeyman, the arbitrator reopened the hearing to finalize the award. The court found that the arbitrator could properly reopen the proceeding under these circumstances in order to issue a definitive award. In <u>Office & Professional Employees International Union, Local No. 471 v. Brownsville General Hospital</u>, 186 F.3d 326 (3d Cir. 1999), the arbitrator ordered the reinstatement of a terminated employee on the condition that he continue sexual harassment counseling sessions with a specifically-named therapist. Shortly after the award was issued, the therapist refused to continue treating the grievant. The court found that the remedy was rendered unenforceable without clarification from the arbitrator on how the parties were to proceed, and thus was an exception to the *functus officio* doctrine. And in <u>Barousse v. Paper, Allied-Industrial</u>, No. Civ. A. 99-2600, 2000 WL 1263120 (E.D. La. Sept. 6, 2000), <u>aff'd</u>, 265 F.3d 1059 (5th Cir. 2001), the arbitrator awarded punitive damages but failed to specify to whom the damages were to be paid. The court found that the arbitrator permissibly issued a clarification letter specifying the recipient of the damages.

By contrast, in <u>Oil, Chemical & Atomic Workers International Union, Local 4-367 v. Rohn & Haas, Texas, Inc.</u>, 677 F.2d 492 (5th Cir. 1982), the court found no ambiguity in the language of an award and thus refused to allow the arbitrator to issue a "clarification." In that case, the union believed that an award relating to a specific grievant should also apply prospectively in similar occurrences. The court found that there was nothing ambiguous about the award -- indeed, it had

already been implemented -- and that the prospectivity issue had not been presented to the arbitrator. "In this case, the express terms of the award have been complied with, and there appears to be no ambiguity with respect to general applicability, since that issue was not previously presented to the arbitrator." Id. at 495.

The Award in the instant matter bears no resemblance to those cases in which the court found an ambiguity to exist. The language of the Award is facially unambiguous, and there is no difficulty in implementing the Award as written. Nothing further must be determined for the payroll records of the grievant to be altered to reflect leave without pay on December 3, 2002, rather than suspension. No unforeseen eventuality has arisen. The Company has fully implemented what the Arbitrator ordered it to do, and the Union has not claimed that such implementation has raised any collateral dispute. That the Award is not what the Union had hoped for does not render it ambiguous.

The Union's beef with the Award as written is really the stuff appeals are made of, the problem being that appeals of arbitration awards are extremely difficult. Arbitration is intended to be a speedier and more informal process than litigation. There is no discovery, virtually no procedural rules, often no lawyers, and very narrow opportunities for appeal. A clever lawyer can always identify something about a decision that raises arguable questions, which in the court system keeps the appeal dockets full. This is not, however, what the ambiguity exception of the *functus officio* doctrine was meant to allow. Arbitrators' awards cannot be appealed or reconsidered through the back-door under the guise of a "clarification." If a dissatisfied party merely has to make a straight-face argument to get its case reconsidered, then the standing of arbitration awards as final and binding is lost. See Colonial Penn, 943 F.2d at 332-333. The ambiguity exception to the *functus officio* doctrine is narrowly drawn to avoid this eventuality.

B3011432.1

It is important to note that the ambiguity the Union claims to exist is <u>not</u> in the Award itself, but rather in the interplay between the Award and the accompanying Opinion. However, it is the Award issued by the Arbitrator, and not his Opinion, that governs.[7] See <u>United Steelworkers v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award . . . is not a reason for refusing to enforce the award"); <u>George Day Constr. Co. v. United Bhd. of Carpenters and Joiners of America, Local 354</u>, 722 F.2d 1471, 1477 (9th Cir. 1984) (a facially plausible award controls and must be enforced even if the arbitrator's basis for the decision is ambiguous). <u>Cf.</u> <u>Air Line Pilots Ass'n v. Northwest Airlines, Inc.</u>, 498 F. Supp. 613, 620 (D. Minn. 1980) ("[I]t is the award and not the opinion that must be examined," under Railway Labor Act).

Here, the Award is not even arguably ambiguous. It reads in whole: "The <u>one day</u> suspension given to Thomas Ouellette was not for just cause. The <u>day</u> shall be converted to leave without pay." See Lowrie Aff., at Exhibit B, p. 5 (emphasis added). Grammatically, there is only one interpretation of those two sentences: "the day" in the second sentence refers to "the one day suspension" in the first sentence. The Award makes no reference to any day other than the one-day suspension. Looking only at the Award, therefore, the Union's argument is nonsensical. The funeral day dispute that led to the suspension is not mentioned in the Award. On the face of the Award, the Arbitrator could have been addressing a one-day suspension related to any kind of alleged infraction, and it would still make complete and unambiguous sense. It is only by resort to the opinion, which does not control, that the Union can even articulate its theory. But, in rendering its decision, the Court must consider only the words contained in the Award itself.

---

[7] Indeed, although it is common for arbitrators to do so, they are not even required by law to write opinions. See <u>United Steelworkers v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award").

B3011432.1

- 14 -

That being said, even if the Court looked beyond the Award to the Arbitrator's reasoning as expressed in his Opinion, still there is no ambiguity. Only the Company's interpretation of the Award is supported by the Opinion. There are myriad reasons why "the day" to which the Arbitrator referred in the second sentence of the Award can only mean the suspension day, as the Company claims, and cannot mean the funeral day, as the Union claims. First, the pay treatment for the funeral day was not an issue before the Arbitrator. It was not grieved. It was not mentioned in the Union's arbitration demand. It was not part of the stipulated issue at the hearing. The contract forbade its being considered in an expedited arbitration. Neither party argued about it, either at hearing or in their briefs. There was no evidence introduced about it. In sum, for the Union's theory to be correct it would mean that the Arbitrator ruled on an issue not presented to him and which could not have been presented to him.

Second, the funeral day was incapable of being <u>converted</u> to leave without pay, as the Arbitrator had ordered "the day" must be. The uncontested evidence (as confirmed by the Union in its letter to Fraser) was that the day that Ouellette took off to attend the funeral was already a day of leave without pay. <u>See</u> Lowrie Aff., at Exhibit C; Matos Aff., at Exhibit A. One cannot <u>convert</u> something to what it already is. "Conversion" requires a change. The only day that could be converted to leave without pay was the suspension day. It began as a mark of discipline, and with the disciplinary aspect having been ordered removed, it was to be converted to leave without pay. This interpretation thus makes both grammatical and logical sense.

Third, the Arbitrator's finding that both parties were at fault squares with the partial relief he ordered, and does not square with the Union's claim that he ordered a complete make-whole remedy. The Arbitrator wrote: "But for the poor communication of the two principal players in the grievance -- Oue[l]lette and Brown -- there is every reason to believe Ouellette would have been given the day off on Monday, December 2, 2002." <u>See</u> Lowrie Aff., at Exhibit B, p. 4. The Arbitrator followed

this statement with a paragraph discussing the multiple reasons for Ouellette's culpability in the matter, and then a paragraph discussing Company supervisor Brown's failings in communicating with Ouellette. The final sentence of the Opinion, directly preceding the Award, reads: "Both principal player[s] were at fault here and discipline is not warranted. Rather, the day should be converted to leave without pay and the discipline removed from the grievant's file." See Lowrie Aff., at Exhibit B, p. 5. Thus, in the Opinion as well as in the Award, the Arbitrator referred to "the day" being converted to leave without pay without ever mentioning the day of the funeral. In the Opinion, reference to "the day" follows a sentence referring to "discipline" (i.e. the suspension), consistent with the Award where "the day" follows reference to the "one day suspension." This further undermines the Union's contention that the Arbitrator simply misspoke by forgetting to clarify which day he meant in his Award.

Fourth, in prior cases involving this Arbitrator and these parties, whenever he intended to award back pay for an unjust suspension, he did so explicitly:

- See Lowrie Aff., at Exhibit G. "The suspension given to Daniel Roy was not for just cause. He shall be given a letter of warning and be **made whole** for the day of suspension."

- See Lowrie Aff., at Exhibit H. "The one-day suspension to Dennis Giannotti was not for just cause. It shall be reduced to a Letter of Warning and the grievant shall be **made whole** for all lost wages and benefits."

- See Lowrie Aff., at Exhibit I. "The 20-day suspension of Donald Campbell was not for just cause. He shall be **made whole** for all lost wages and benefits."

It is not a coincidence that the Arbitrator explicitly provided that the unjustly suspended grievant be "made whole" in each of these cases. That is standard remedial language when it is the Arbitrator's intention to award such relief. Indeed, in this case, the Union's demand for Arbitration specifically requested that the Arbitrator "make employee whole." See Lowrie Aff., at Exhibit D. That the Arbitrator did not, in this case only, afford a make-whole remedy as the Union requested establishes that he chose not to award that remedy. The alternative explanation, that the Arbitrator

B3011432.1                                    - 16 -

simply forgot to award back pay and instead ruled on a matter not before him and about which he heard no testimony, is illogical. It may be that the Union was surprised and annoyed by the Arbitrator's failure to award make-whole relief, but the Union's expectations do not provide grounds to find an ambiguity where none exists.

Therefore, in order for the Opinion to render the Award ambiguous in the manner that the Union claims, the Arbitrator would have to have made several fundamental errors in rendering his Award. He would have had to: (1) fail to mention the remedy he intended for the suspension he was ruling on (i.e., make whole relief), even though the Union specifically requested it and he routinely awards it; (2) issue a remedy regarding an issue that was not before him (i.e., the pay treatment of the funeral day); and (3) incorrectly render an award on the day of the funeral by "converting" it to a day of leave without pay which the Arbitrator knew it already was. A side-by-side comparison of the Award and the "clarification" reveals just how dubious is the proposition that the former was simply an inartful articulation of the latter.

> AWARD:
>
> "The one day suspension given to Thomas Ouellette was not for just cause. The day shall be **converted** to leave without pay and the discipline shall be removed from his file."
>
> CLARIFICATION:
>
> "The one day suspension give[n] to Thomas Ouellette was not for just cause. **He shall be made whole for all lost wages and benefits arising from this suspension** and the discipline shall be removed from his file.
>
> The day **of the funeral** shall be **treated** as day of leave without pay."[8]

Even a rookie arbitrator could not be expected to make these mistakes. However, the Arbitrator in this matter was experienced, he was one of the designated permanent umpires for expedited arbitrations between these parties, and he heard many such cases. The degree of logical

---

[8] Emphases added.


gymnastics required to justify the Union's position amply demonstrates that the Award was not "patently ambiguous" such that there would be an exception to the *functus officio* doctrine.

The Union argues that the Award must be ambiguous because it is so unorthodox for an arbitrator to rescind a suspension without awarding back pay. But even if the Union's premise were correct, its conclusion would be wrong. The Arbitrator's departure from the "standard" remedy is further proof that he intentionally granted only partial relief. Nothing prohibited him from doing so. There is no arbitral rule requiring the award of back pay with the rescission of a suspension, nor does the parties' Contract prescribe a remedy if the arbitrator should determine that the Company issued a suspension without just cause.[9] Had the parties intended that back pay be awarded to every grievant whose suspension is overturned by an arbitrator, they would have included that provision in their Contract, rather than leaving the remedy to the arbitrator's discretion.[10]

In fact, however, arbitrators can and do rescind suspensions without awarding back pay, most often in cases like this one where the grievant is found not to be blameless. See, e.g., Armstrong Rubber Co., Des Moines Plant v. United Rubber, Cork, Linoleum and Plastic Workers of America, Local 164, 78 LA (BNA) 857 (1982) (Williams, Arb.) (three-day suspension of employee who left work without authorization rescinded, but no back pay awarded because employee failed to inform company medical personnel of her medical condition); Peachtree Doors Inc. v. United Steel Workers of America, Local 8727, 91 LA (BNA) 585 (1988) (Yarowsky, Arb.) (suspension of employee accused of requesting to leave work early for false reasons rescinded, but lost wages precluded by employee's conduct); Snap-On Tools Corp. v. International Ass'n of Machinists and Aerospace

---

[9] In its arbitration demand, the Union requested three distinct remedies: "cease and desist," "rescind suspension," and "make employee whole." See Lowrie Aff., at Exhibit D. The Union now argues that the second and third of these remedies are really one and the same.

[10] Compare the Company's contract with the CWA union in New York. See Lowrie Aff., at Exhibit F ("[i]n a suspension case, the employee shall receive his basic weekly wage rate for the time lost less the amount of any unemployment compensation received or receivable and any amount paid to or receivable by the employee as wages in other employment").

B3011432.1                                                          - 18 -

gymnastics required to justify the Union's position amply demonstrates that the Award was not "patently ambiguous" such that there would be an exception to the *functus officio* doctrine.

The Union argues that the Award must be ambiguous because it is so unorthodox for an arbitrator to rescind a suspension without awarding back pay. But even if the Union's premise were correct, its conclusion would be wrong. The Arbitrator's departure from the "standard" remedy is further proof that he intentionally granted only partial relief. Nothing prohibited him from doing so. There is no arbitral rule requiring the award of back pay with the rescission of a suspension, nor does the parties' Contract prescribe a remedy if the arbitrator should determine that the Company issued a suspension without just cause.[9] Had the parties intended that back pay be awarded to every grievant whose suspension is overturned by an arbitrator, they would have included that provision in their Contract, rather than leaving the remedy to the arbitrator's discretion.[10]

In fact, however, arbitrators can and do rescind suspensions without awarding back pay, most often in cases like this one where the grievant is found not to be blameless. See, e.g., Armstrong Rubber Co., Des Moines Plant v. United Rubber, Cork, Linoleum and Plastic Workers of America, Local 164, 78 LA (BNA) 857 (1982) (Williams, Arb.) (three-day suspension of employee who left work without authorization rescinded, but no back pay awarded because employee failed to inform company medical personnel of her medical condition); Peachtree Doors Inc. v. United Steel Workers of America, Local 8727, 91 LA (BNA) 585 (1988) (Yarowsky, Arb.) (suspension of employee accused of requesting to leave work early for false reasons rescinded, but lost wages precluded by employee's conduct); Snap-On Tools Corp. v. International Ass'n of Machinists and Aerospace

---

[9] In its arbitration demand, the Union requested three distinct remedies: "cease and desist," "rescind suspension," and "make employee whole." See Lowrie Aff., at Exhibit D. The Union now argues that the second and third of these remedies are really one and the same.

[10] Compare the Company's contract with the CWA union in New York. See Lowrie Aff., at Exhibit F ("[i]n a suspension case, the employee shall receive his basic weekly wage rate for the time lost less the amount of any unemployment compensation received or receivable and any amount paid to or receivable by the employee as wages in other employment").

Workers, Local Lodge 1856, 104 LA (BNA) 180 (1995) (Cipolla, Arb.) (three-day suspension rescinded without back pay, except that employee can work overtime to make up lost wages if he wished); Babcock & Wilcox Co. v. International Bhd. of Boilermakers Local 903, 102 LA (BNA) 104 (1994) (Nicholas, Arb.) (suspension pending outcome of criminal proceeding rescinded, no back pay awarded); United Steelworkers of America, Local # 6803 v. Universal Coops., Inc., FMCS Case No. 991019-17166-7, 2000 WL 995232 (Apr. 6, 2000) (Berquist, Arb.) (arbitrator rescinded suspension of employee whose health condition employer feared posed safety risk, but awarded no back pay, because while unjustified, employer's actions were taken in good faith).[11]

Indeed, the Union itself has proposed and agreed to grievance settlements where back pay is not given even though a suspension is overturned. The Union frequently proposes this to the Company as a resolution of grievances relating to suspensions. See Lowrie Aff., ¶¶ 13-14. On occasion, the parties have agreed to such settlements. See Lowrie Aff., ¶ 15. Thus, the Union's claim that the same result reached by an arbitrator is "absurd" and "disingenuous" was simply false outrage designed to get Fraser to change his mind.

### IV.   Fraser's Letter is Unenforceable Because it is a Reversal of the Award.

Questions of ambiguity aside, the 180-degree reversal of the remedy awarded by the Arbitrator was clearly a reconsideration and substantive alteration of the Award, and thus exceeded the bounds of his authority. In cases where an arbitrator has subsequently altered the substance of an earlier award, courts have found such actions to violate *functus officio* and have refused to enforce them, even if an ambiguity in the original decision warranted clarification. In Colonial Penn, the Third Circuit overturned the district court's enforcement of a "clarified" award. The Court found that a purported clarification, which fundamentally changed the remedy contained in the original

---

[11] This also happens in discharge cases. See Mansfield Plumbing Prods., Inc. v. Teamsters Local 40, 117 LA (BNA) 400 (2002) (Paolucci, Arb.) (employee who was discharged for failing drug test was reinstated without back pay because company's "overreaction is balanced by the need to place some blame on the Grievant for his actions").

award, violated the *functus officio* doctrine. In that case, the arbitration panel issued an amended award that raised the penalty to be paid by Omaha from $10 million to nearly $19 million, claiming that the initial award was based on a mistaken assumption by the panel. The Court rejected the arbitration panel's justification and could not agree that it had merely clarified its original award. To the contrary, the Court found that in issuing the purported clarification, the panel repudiated its first award "in derogation of the *functus officio* doctrine." 943 F.2d at 333. Similarly, in Domino Group, Inc. v. Charlie Parker Memorial Foundation, the Eighth Circuit upheld the vacation of a modified award to the extent that it fundamentally altered the remedy provided in the original award.

> [B]y reversing his initial decision to deny damage relief, the arbitrator violated the principle that, "once an [arbitrator] renders a decision regarding the issues submitted, [he] becomes *functus officio* and lacks any power to reexamine that decision." . . . Therefore, to the extent that the arbitrator's Clarification of Award purported to award alternative damage relief, it exceeded the arbitrator's authority and was a nullity.

985 F.2d at 420-21 (citation omitted).

Likewise, here, for all the reasons discussed at length above, the Arbitrator's letter of "clarification" fundamentally altered the remedy granted in the Award, rendering such clarification a nullity.

WHEREFORE, Verizon New England Inc. respectfully requests that the Court award summary judgment in its favor and dismiss the Complaint.

**VERIZON NEW ENGLAND INC.,**

By its attorneys,

James W. Bucking, BBO #558800
Alicia Alonso Matos, BBO #651154
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on April 15, 2005.

Dated: April 15, 2005