UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOCAL 2322, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br><br>                    Plaintiff,<br><br>v.<br><br>VERIZON, INC.,<br><br>                    Defendant. | Civil Action No. 04-12490 RWZ |

**VERIZON NEW ENGLAND INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.      The Company Had No Obligation to Move to Vacate the Post-Award Letter.

The Union's motion for summary judgment is grounded in a fallacy, namely that the rule requiring a party to move to vacate an award in order to have its objections to the award heard in court, applies to a *functus officio* case. It does not. The fact that the Company did not move to vacate the unlawful post-Award "clarification" by Bruce Fraser is irrelevant to the Court's decision in this case. Fraser's letter was a legal nullity and unenforceable, and the Court may so find even though the Company did not initiate this action. Thus, the Union's argument that this case should be dismissed on a technicality must be rejected.

The Union in its brief erected a straw man that was easy to tear down, but it has no bearing on this dispute. The cases cited by the Union in its motion stand for the proposition that, in a typical case, if a losing party does not move to vacate an arbitration award, it may not later raise defenses against a motion to enforce the award by the prevailing party. The Company does not dispute this general proposition. However, it simply does not apply to *functus officio* cases. It is noteworthy that the Union provided the Court with <u>not even a single case</u> in which this rule

B3018435.3

was applied to a post-award issuance that is disputed on *functus officio* grounds. It did not do so because courts do not apply the waiver rule to cases in which an issuance by an arbitrator is challenged as a violation of *functus officio*.

There are cases on the subject, but these cases failed to find their way into the Union's brief. A review of the applicable case law reveals that when an arbitral pronouncement is issued in violation of the *functus officio* doctrine, a party has no obligation to move to vacate in order to have its position heard. In <u>Domino Group, Inc. v. Charlie Parker Foundation</u>, 985 F.2d 417 (8th Cir. 1993), an arbitrator had issued a clarification to his award after a federal court remand. When the case ended up back in court on the prevailing party's motion to enforce, the Court held that the defendant had waived its right to challenge the original award and part of the court-ordered clarification because it failed to move to vacate. However, as to that portion of the subsequent clarification that exceeded the arbitrator's authority in violation of *functus officio*, it was incapable of enforcement and was vacated even absent any motion to vacate on the part of the defendant. The Eighth Circuit held:

> [T]he Foundation's failure to file a motion to vacate, modify, or correct within three months of either the initial award or the Clarification of Award waived any defenses to confirmation that might be asserted in a timely motion to vacate. . . . [However,] by reversing his initial decision to deny damage relief, the arbitrator violated the principle that, 'once an [arbitrator] renders a decision regarding the issues submitted, [he] becomes *functus officio* and lacks any power to reexamine that decision. . . . Therefore, to the extent that the arbitrator's Clarification of Award purported to award alternative damage relief, it exceeded the arbitrator's authority and was a nullity. The district court's decision to set aside that portion of the Clarification of Award is affirmed.

985 F.2d at 419-21 (citation omitted).

The posture of many other *functus officio* cases also is a motion to enforce without a motion to vacate, yet the courts never even raised the issue of waiver in these cases. Rather, the parties opposing enforcement of an award on the ground that it violated *functus officio* are

afforded consideration on the merits even though they have not moved to vacate the award. See Mercury Oil Refining Co. v. Oil Workers Int'l Union, 187 F.2d 980 (10th Cir. 1951); Office & Professional Employees Int'l Union, Local No. 471 v. Brownsville General Hospital, 186 F.3d 326 (3d Cir. 1999); Brown v. Witco Corp., 340 F.3d 209 (5th Cir. 2003).

This makes good sense because *functus officio* implicates the arbitrator's inherent authority to act, as distinguished from most appeal issues which are personal to one of the parties to the dispute or to the contract between them that calls for arbitration. In this way, *functus officio* is like the public policy doctrine, where courts will not enforce an award that exceeds the legal bounds of arbitral authority. This stands in contrast to the cases relied upon by the Union, in which the party's challenge was personal, such as that an award was not arbitrable under the parties' contract, that there was a lack of personal jurisdiction, or that the arbitrator was not faithful to the contract in rendering his decision. When the nature of a challenge to an award is personal, it is sensible to put the onus on the non-prevailing party to act, and to find waiver if it fails to do so. Not so when an award violates public policy, which may not be enforced regardless of the parties' agreement. "[A] court may not enforce a collective-bargaining agreement that is contrary to the public policy . . . the question of public policy is ultimately one for resolution by the courts." W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 766 (1983). Thus, in Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc., 819 F.2d 639 (6th Cir. 1987), cited by the Union in its brief, although the appellants did not bring a motion to vacate and thus waived certain of their defenses, the court nonetheless vacated the arbitration award because it was contrary to public policy.

There is another fundamental flaw in the Union's waiver argument. In order for a party to be obligated to file a motion to vacate an <u>award</u>, that party must be faced with an <u>award</u> with which it takes issue. One of the key cases cited by the Union provides: "the Massachusetts Supreme Judicial Court has stated that the thirty-day limit applies to any motion to vacate an arbitration **award**." <u>Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers, Local Union No. 6 v. Thermo-Guard Corp.</u>, 880 F.Supp. 42, 47 (D. Mass. 1995).[1] Likewise with the statute upon which the Union relies: "[u]pon application of a party, the superior court shall vacate an **award**. . . ." Mass. Gen. L. ch. 150C, § 11.[2] Here, there is no award that Verizon is challenging in this proceeding.

Verizon had no obligation to move to vacate something that was not an award. All of the cases cited by the Union, including <u>Thermo-Guard,</u> deal with the enforceability of allegedly flawed awards, but indisputably awards nonetheless. In none of these cases is the status of the "award" as an "award" questioned. In <u>Thermo-Guard</u>, for instance, the arbitrator held a hearing and issued an arbitration award. Although the employer challenged the award as exceeding the arbitrator's jurisdiction under the collective bargaining agreement, there was no claim that the award was not an award. This is quite distinct from the instant situation. Here, what the Union seeks to enforce is not the Award, but a post-Award letter contradicting the Award. It is a non-award, and as such, the Company had no obligation to move to vacate it.

Of course, there was an award issued in this case: the June 4, 2004 Award. The Company complied with the Award and implemented the remedy ordered. Following this, the Company had no further obligation. The Company had no issue with the Award, even though it

---

[1] Emphasis added.

[2] Emphasis added.

was not the "winner" of that decision, and had no desire to have the Award vacated. The Company concedes that if it sought in this proceeding to challenge that Award, it would be estopped, not having filed a motion to vacate. But the Company is not taking such a position here.

A letter issued subsequent to an award is not an award. It is a legal nullity, issued in violation of the arbitrator's inherent lawful authority. Thus, the Company was not required to take any action in response to Fraser's letter, and not having done so has no bearing on the Company's ability to raise *functus officio* issues here. If the Union, after receiving the Award in this case, had approached the hot-dog vendor outside AAA and asked him his opinion of the case, and then provided the Company with that opinion, the Company would not have been obligated to move to vacate. This may seem like a silly analogy, but the fact is that under the *functus officio* doctrine an arbitrator whose authority ends when his opinion issues has no more legal standing than the hot dog vendor. In either case, post-award statements made outside the parameters of inherent arbitral authority do not trigger an obligation for a motion to vacate.

Therefore, there is no threshold procedural question that must be addressed by the Court prior to consideration of the merits. Here they are one and the same. The question of whether Fraser's August 16 letter was or was not a legal nullity, a necessary element to the waiver issue posited by the Union, can only be resolved by analyzing the *functus officio* doctrine.

Indeed, there is supreme irony to the Union's position. It was the Union, not the Company, who took issue with the June 4 Award. Yet the Union, although believing the Award's remedy was incorrect, failed to move to vacate the Award. Instead, the Union pressured the Arbitrator to "clarify" his opinion, such that the Arbitrator reversed the remedy awarded. If it had really believed that the Award required clarification instead of pressuring the

Arbitrator, the Union could have moved in court to vacate or to have the case remanded to the arbitrator for clarification upon a showing of an ambiguity, just as it did in <u>Locals 2222, 2320-2327, Int'l Brotherhood of Electrical Workers, AFL-CIO v. New England Telephone & Telegraph Co.</u>, 628 F.2d 644 (1st Cir. 1980). In that case, between these same parties and under the same contract, the Union argued successfully to the Court that clarification by the arbitrator was necessary because an ambiguity existed in the award, such that it could not be implemented. That case demonstrates that the Union is fully aware of the proper means by which it can seek clarification of an ambiguous award. Not having filed the proper action in court itself, presumably because it could not hope to demonstrate any ambiguity meriting remand to the arbitrator, the Union now has the audacity to try to preempt the Company's complaints about the route the Union took by raising the Company's failure to go to court. The fact is that unlike the Union, the Company had no reason to vacate the June 4 Award and cannot be penalized for failing to do so.

The Union cannot succeed in its gambit. Having improperly engineered a reversal of the remedy it was dissatisfied with, the Union cannot be allowed to deny the Company its day in court defending itself against an issuance with no force of law. This would run counter to the policy behind arbitration. Arbitration is meant to be an informal, inexpensive and speedy, yet final and binding process of resolving disputes. In most cases, these goals are consistent with requiring the employer to move quickly to vacate an award it disputes. In this case, these goals are consistent with Verizon's refusal to allow the Union to add an appeal under the guise of a clarification that impermissibly extended and complicated an otherwise straightforward process. For the Court to accept the Union's argument, it would be imposing on Verizon not just the obligation to move to vacate an award (consistent with the current law), but additionally the duty

to move to vacate any post-award pronouncements no matter how improper. Ironically, the Union itself cites to Posadas de Puerto Rico Assoc., Inc. v. Asociacion de Empleados de Casino de Puerto Rico, 821 F.2d 60, 61 (1st Cir. 1987) for the proposition that "with exasperating frequency, [we are] confronted by challenges to such decisions brought by parties who are apparently still under the delusion that, as a matter of course, the losing party is entitled to appeal any adverse ruling by an arbitrator." This is precisely what the Union did in this case, and precisely what the Company argues should not be permitted.

II.   The Union Cannot Show that Fraser Had Any Authority to Issue the Post-Award Letter.

As to the merits, the Union's brief is littered with *dicta* wherein various judges have commented on the place of *functus officio* in the current legal environment. The fact is, however, that although some courts view the doctrine as ill, it clearly is not dead, as that *dicta* invariably appears in decisions where the doctrine is being applied, not rejected. As the Company described in its motion papers, arbitrators can revisit an issued award only under three circumstances: (1) when there is a mistake on the face of the award; (2) when the award is incomplete; or (3) when the award is patently ambiguous. See e.g. Colonial Penn Ins. Co. v. Omaha Indemnity Co., 943 F.2d 327, 332 (3rd Cir. 1991).

The *functus officio* doctrine is certainly not dead in the First Circuit. The Union's characterization in its Memorandum of the arbitrator's "inherent power" to go back and change an award is simply incorrect. See Union Memorandum, at 11, referring to Red Star Express Lines v. Int'l Brotherhood of Teamsters, Local 170, 809 F.2d 103, 106 (1st 1987). While the Court in Red Star discussed the arbitrator's power to "interpret or amplify" an award, this was in the context of discussing two First Circuit cases in which the arbitration awards were deemed to be ambiguous or incomplete. Thus, each of the cases referred to by the Red Star Court applied

the recognized exceptions to the *functus officio* doctrine; they did not reject the doctrine. In Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273 (1st Cir. 1983), the Court explicitly found that although the original arbitration award ordered a position to be filled by the senior journeyman, it failed to establish who that was, rendering it ambiguous or incomplete. Therefore, the arbitrator's subsequent clarification was permissible and did not run afoul of *functus officio*. Likewise, in Local 2222, 2320-2327 Int'l Brotherhood of Electrical Workers v. New England Telephone & Telegraph Co., 628 F.2d 644 (1st Cir. 1980), when an arbitration award failed to address whether overtime was to be calculated for the purposes of a back pay award, there was an ambiguity leading to remand to the arbitrator for clarification. Nothing in these cases supports the proposition advanced by the Union that *functus officio* is a dead letter and an arbitrator has the unfettered right to alter an unambiguous, final award.

The Union also argues that the Award must have been ambiguous because Fraser later "clarified" that he meant to say what the Union says he meant to say. This cannot be the test the Court uses to determine if an ambiguity exists. It is precisely because of the dangers of an arbitrator changing his mind under pressure from one of the parties that the *functus officio* doctrine exists. The arbitrator's subsequent statement, made after pressure from the Union, is not a reliable guide for whether his Award was ambiguous. Either the Award was ambiguous or it was not, which must be determined at the time the Award is issued. The Court cannot allow an after-the-fact "clarification" by the arbitrator to be determinative or even relevant, for this by definition would defeat the entire purpose of the *functus officio* doctrine.

It is curious that while the Union claims *functus officio* is a dead letter, it nonetheless concedes that "an arbitrator is not free to rehear or redetermine the merits of a case." See Union Memorandum at 10. That is precisely what Fraser did in this case. He took additional evidence

from counsel for the parties by telephone, and then issued a statement that reversed his award. Such a redetermination is the essence of *functus officio*, rendering Fraser's "clarification" unenforceable.

III.     The Union's Claim for Attorneys' Fees Must Be Rejected.

One final irony is the Union's claim for attorneys' fees. The Union accuses the Company of the "audacious flouting of this principle" that "losing parties to an arbitration may not seek redress . . . from a decision that was appropriately rendered." See Union Memorandum at 14. This is the pot calling the kettle black. The Company fully complied with the Award. The Union, by contrast, was unhappy with the remedy and so effectively "appealed" it by seeking a new opinion from Fraser. Now, having improperly achieved the "clarification" it sought, the Union bases its entire case on the notion that the Company can make no substantive argument because it never filed a motion to vacate. In so arguing, the Union has neglected to bring to the Court's attention the fact that its waiver argument does not apply to *functus officio* cases. Thus, the Union has unilaterally created an improper appeal and now tries to win by default.

Throughout this matter, the Company has acted reasonably and in good faith. The Arbitrator ordered the Company to rescind Ouellette's discipline and convert his suspension to a day of leave without pay. It did this. Had it been ordered to make Ouellette whole, it would have done so. The Company arbitrates dozens of grievances per year, and when ordered to give back pay to grievants, it does so. The Company settles dozens more cases per year and agrees to give back pay to grievants. Even in this case, the Company voluntarily paid Ouellette two days back pay during the grievance process when it reduced his three-day suspension to one day. The Union pretends that the Company has chosen to expend time, energy and thousands of dollars to avoid paying Ouellette a few hundred dollars (a day's pay). In fact, this is a serious matter of

principle. In order for the arbitration process to continue to have integrity, the parties must abide by the awards of the arbitrators. The Union in this case has not abided by the Award, but instead has contrived multiple bites at the apple to get what it thought it deserved. The Company's challenge to the Union's actions can hardly be described as frivolous.

WHEREFORE, Verizon New England, Inc. respectfully requests that the Court deny the Union's Motion for Summary Judgment and grant summary judgment in favor of the Company.

**VERIZON NEW ENGLAND INC.,**

By its attorneys,

_____
James W. Bucking, BBO #558800
Alicia Alonso Matos, BBO #651154
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: May 6, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on May 6, 2005.