UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12490-RWZ

LOCAL 2322, INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS

v.

VERIZON, INC.

MEMORANDUM OF DECISION AND ORDER

November 23, 2005

ZOBEL, D.J.

On December 2, 2002, Thomas Ouellette, a Verizon employee, took the day off to attend the funeral of his wife's grandfather, believing he was entitled to do so. In fact, his absence was not authorized. He was accordingly deemed to have taken an unauthorized absence, and he was suspended for three days. Plaintiff ("the Union") grieved the suspension, as a result of which Verizon reduced the suspension to one day, December 3. Ouellette was not paid for either December 2 or December 3. The parties were unable to resolve their remaining disagreements through the grievance process and thus, under the terms of their collective bargaining agreement, proceeded to arbitration. In a June 2004 written decision, the arbitrator concluded that "[b]ut for the poor communication of [Ouellette and his supervisor]," no dispute would have arisen, and that "[b]oth principal player[s] were at fault here and discipline is not warranted." (Lowrie Aff., Ex. B., at 4-5). The arbitrator's award stated:

> The one day suspension given to Thomas Ouellette was not for just cause.
> The day shall be converted to leave without pay and the discipline removed from his file.

(Id.).

Unfortunately, the parties disagreed as to the meaning of the arbitrator's award. Verizon insisted that the arbitrator had awarded relief only as to the December 3 suspension. The "day" referred to in the second sentence was, according to Verizon, December 3, which Verizon promptly converted from a suspension to a day of unpaid absence. But Verizon refused to take any action as to Ouellette's December 2 absence, which it did not think was addressed by the arbitrator's award and accordingly continued to view as a day of unauthorized absence.

The Union, unsurprisingly, saw things differently. It interpreted the award to cover both days: the first sentence referred to December 3, and the second sentence referred to December 2. Under this interpretation, the arbitrator—by stating that the December 3 suspension was not for just cause—had intended that Verizon would make Ouellette whole for that day, rather than simply converting the day to an unpaid absence. As for December 2, the Union argued that the second sentence of the award applied; the "day" to which the arbitrator referred in the second sentence was December 2, which should be converted from an unauthorized absence to an unpaid absence.

Unable to resolve their differences, the Union wrote a letter to the arbitrator, with a copy to Verizon, via the American Arbitration Association ("AAA"), seeking clarification. The Union noted that it "seem[ed] absolutely clear" that the second sentence of the award referred to the funeral day, December 2, and that the first sentence, which referred to the one-day suspension, "clearly entitled" Ouellette to an

2

award of backpay for that day.  (Pl.'s Rule 56.1 Statement, Ex. 3).  The AAA invited Verizon to respond, which it did, in a letter that both challenged the arbitrator's authority to issue a clarification and argued for Verizon's interpretation of the award.  (Id., Ex. 4).  The arbitrator held a conference call with the parties and then issued a clarification of his award in August 2004, which stated:

> The one day suspension give[n] to Thomas Ouellette was not for just cause.  He shall be made whole for all lost wages and benefits arising from this suspension and the discipline shall be removed from his file.
>
> The day of the funeral shall be treated as day of leave without pay.

(Id., Ex .7).  When Verizon refused to comply with this clarification, the Union sued for enforcement of the award as clarified.

Before the court are the parties' motions for summary judgment, which are governed by the familiar Rule 56 standard.  Only if there is no genuine issue as to a material fact is the moving party entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  In determining whether the movant has met this burden, I view the record in the light most favorable to the non-movant and draw inferences in that party's favor. See Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993).  "Where as here cross-motions for summary judgment are involved, the court must consider each motion separately, drawing inferences against each movant in turn."  Merchants Ins. Co. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1988) (internal quotation marks omitted).

I.   Summary Judgment Motions

Although the parties raise numerous arguments as to why the arbitrator's clarification should or should not be enforced, this case is at heart about the

applicability of the functus officio doctrine.  Verizon claims (1) that under the functus officio doctrine, the arbitrator lacked authority to issue a clarification after he rendered his June 2004 award, and (2) that the clarification of the award therefore cannot be enforced.  The Union disagrees, arguing that the functus officio doctrine is subject to several exceptions, one of which the Union believes is squarely applicable in this case.  I agree with the Union and find that enforcement of the arbitrator's award as clarified in the August 2004 letter is not barred by the doctrine of functus officio.  Because Verizon offers no other reason why the award should not be enforced, plaintiff is entitled to judgment as a matter of law.[1]

Under the common law doctrine of functus officio, "once an arbitrator executes and delivers an award, that award is final and the arbitrator lacks any power to amend it."  Red Star Express Lines v. Int'l Bhd. of Teamsters, Local 170, 809 F.2d 103, 106 (1st Cir. 1987).  Verizon's argument is that once the arbitrator had issued the June 2004 award, he lacked authority to issue any further decision.  The August 2004 clarification is therefore, according to Verizon's view, void.  The problem for Verizon is that the functus officio doctrine is no longer robustly applied, in large part because it "originated in the bad old days when judges were hostile to arbitration and ingenious in hamstringing it."  Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co., 56 F.3d 844, 846 (1st Cir. 1995).  Whether the doctrine makes sense in a world where "every court, and every administrative agency that

---

[1]It is therefore unnecessary to determine whether Verizon's failure to move to vacate the award bars it from now challenging the award.  Even assuming Verizon is entitled to bring a functus officio challenge, plaintiff still prevails.

exercises adjudicative authority, has been understood to have . . . the inherent power to reconsider its decisions within a reasonable time" is unclear. Id. at 847. Moreover, its applicability in labor disputes has been questioned by a number of courts, including the First Circuit. See Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 702 F.2d 273, 279 (1st Cir. 1983) ("federal courts have refused to apply the strict common law rule of functus officio [in the labor relations context]"). One court has even wondered "whether [the doctrine] can even be said to exist in labor arbitration." Excelsior Foundry Co., 56 F.3d at 846.

Not only has the doctrine waned in recent decades, but it has also become "riddled with exceptions" that have increased the arbitrator's latitude to retain jurisdiction over a dispute. Id. An arbitrator may, for example, reopen an incomplete award to supplement or complete it. See Courier-Citizen Co., 702 F.2d at 279. An arbitrator may also "interpret or amplify his award, functus officio notwithstanding." Red Star Express Lines, 809 F.2d at 106 (internal quotation marks omitted). Thus, an arbitrator may "clarify an ambiguous award," or "address an issue submitted to him but not resolved by the award." Green v. Ameritech Corp., 200 F.3d 967, 977 (6th Cir. 2000) (internal quotation marks omitted). He may not, however, go so far as to alter the original award. See Excelsior Foundry, 56 F.3d at 847. In other words, the case law indicates that the functus officio doctrine now draws the line somewhere between interpretation and alteration of an original award.

In this case, the arbitrator's clarification fell within the interpretive exception to the functus officio doctrine. Verizon claims that the original award was unambiguous,

but is ultimately unpersuasive. First, Verizon contends that December 2, the funeral day, was already recorded as a day of leave without pay, or "unpaid absence,"[2] in Ouellette's record. (See Def.'s 4/15/05 Mem., at 5). The arbitrator therefore could not possibly have been referring to December 2 when he ordered that "the day" should be converted to a day of leave without pay. Unfortunately for Verizon, however, December 2 is not marked as a day of unpaid absence in Ouellette's employee record, but is rather marked as a day of "<u>unauthorized</u> absence." (Lowrie Aff., Ex. C).

Verizon also argues that the Union's grievance and arbitration demand referred only to the one-day suspension, and not to the funeral day. (Def.'s 4/15/05 Mem., at 15). Therefore, Verizon maintains, the arbitrator could only have been referring to the one-day suspension in his award. That conclusion, however, would require me to ignore the fact that Ouellette's December 2 absence was at the heart of this dispute. It would also require me to ignore the arbitrator's lengthy discussion of the events on December 2, which led to the suspension on December 3.[3] And though the Union's demand for arbitration did indeed refer to the "one day suspension," it also sought to have the employee "ma[d]e . . . whole." (Lowrie Aff., Ex. D). Because Ouellette had

---

[2]Verizon uses the two terms interchangeably. (See Def.'s 4/15/05 Mem., at 4).

[3]Indeed, Verizon itself relies on the arbitrator's written decision for one of its arguments, thereby undermining its contention that only the award should govern. The argument itself is unsuccessful: Verizon contends that because the arbitrator found both parties at fault in his written decision, he would not have intended to award Ouellette backpay. There is no basis for that assumption. It is just as likely (and in light of the arbitrator's clarification, more likely) that the arbitrator intended to award Ouellette backpay for December 3, while leaving December 2 unpaid, in recognition of the fact that some of the fault was Ouellette's.

6

not been paid for December 2, that request brought December 2 within the scope of the arbitration.  The arbitration clearly concerned the events of December 2 that led to the suspension on December 3, and the arbitrator's written decision accordingly concerned more than one "day."  This too renders ambiguous the arbitrator's reference to "the day" in the second sentence of the award.

Perhaps most telling is the parties' differing interpretations of the award and their inability to resolve their differences.  In the end, this dispute was about the events of one day that led to a suspension on the next day.  The arbitrator's reference to "the day" thus arguably required clarification, and his subsequent letter "can be fairly characterized as 'interpretive.'" Excelsior Foundry, 56 F.3d at 847.  Verizon argues that the clarified award was a "180-degree reversal of the remedy [originally] rewarded" (Def.'s 4/15/05 Mem., at 19), and thus constitutes an alteration barred by the functus officio doctrine.  But the clarification could only constitute a "reversal" of "alteration" of the original award if I accept Verizon's reading of the original award.  While I find that interpretation plausible, I do not subscribe to it.  Indeed, putting the issue of the arbitrator's authority to the side, the arbitrator's clarification of his decision substantially undermines Verizon's reading of the original award.  Thus, I find that the original award was sufficiently ambiguous, such that the arbitrator's subsequent clarification fell within an exception to the functus officio doctrine.

Finally, Verizon raises two procedural points.  First, it contends that the Union should have moved to vacate the original award or to remand the case to the arbitrator for clarification upon a showing of ambiguity.  (Def.'s 5/6/05 Mem., at 6).  While a

motion to remand for clarification is the usual route in these cases, the Union's failure to follow that procedural route is not necessarily fatal to its case. Cf. Courier-Citizen Co., 702 F.2d at 279 (where arbitrator had sua sponte reopened incomplete initial award and had issued clarification, court would not vacate award, even though obtaining a court order before reopening might have been "prudent"). Indeed, the First Circuit has previously noted that an action requesting remand to an arbitrator for clarification and an action for enforcement are "[in] essence . . . the same." Locals 2222, 2320-2327, Int'l Bhd. of Elec. Workers v. New England Tel. & Tel. Co., 628 F.2d 644, 651 (1st Cir. 1980). It would hardly be efficient at this stage to vacate the arbitrator's clarified award and order the parties to return to the arbitrator, only to receive a second clarified award substantially the same as the first clarification. See Courier-Citizen Co., 702 F.2d at 279-80 ("forc[ing] the parties to return to the arbitrator to obtain an award identical to the one vacated would simply undermine arbitration as a mechanism for resolving labor disputes cheaply and efficiently").

  Second, Verizon has suggested that the Union engaged in improper ex parte communications with the arbitrator, coercing him into issuing the clarified award in the Union's favor. As an initial matter, ex parte communications do not automatically require an award to be vacated. See Excelsior Foundry, 56 F.3d at 846 ("An ex parte contact is not an automatic ground for invalidating such an award."). Moreover, Verizon had and took the opportunity to submit a letter to the arbitrator, in which it argued that clarification was neither authorized nor necessary. Verizon also participated in the conference call held by the arbitrator before he issued the

clarification.  This procedural background suggests that even if an improper ex parte contact occurred, the arbitrator's decision to clarify his award was not partial, but was based on fair consideration of both parties' arguments.  See id. (ex parte contact, even if improper, does not require vacation unless it triggers some recognized ground, such as partiality on the part of the arbitrator).

The arbitrator's August 2004 clarified award therefore falls within an exception to the functus officio doctrine and was within his authority.  The Union is thus entitled to sue for its enforcement under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Because Verizon has offered no other reasons why the award should not be enforced, plaintiff is entitled to summary judgment.

II.     Attorneys' Fees

In addition to moving for summary judgment, the Union seeks attorneys' fees and costs, claiming that Verizon has "violate[d] the First Circuit's repeated admonition that losing parties to an arbitration may not seek redress in the courts from a decision that was appropriately rendered."  (Pls.' 4/15/05 Mem., at 14).  An award of fees and costs is appropriate if defendant's refusal to obey the arbitrator's clarified award was "'without justification,'" see Courier-Citizen Co., 702 F.2d at 282, and its position "continues to be frivolous, unreasonable, and without foundation," see Local 285, Service Employees Int'l Union v. Nonotuck Resource Assocs., Inc., 64 F.3d 735, 742 (1st Cir. 1995).  Verizon's challenge to the arbitrator's authority to clarify his original award does not fall in this category.  The line between an arbitrator's permissible "interpretation" of his original award and an impermissible "alteration" or "modification"

is often difficult to draw. See Excelsior Foundry, 56 F.3d at 847 (noting that "much alteration can be achieved in the name of interpretation"). Although Verizon's briefs made the functus officio doctrine out to be more robust than it actually is, its arguments were nevertheless based on a plausible, if ultimately unsuccessful, reading of the case law and the arbitration award at issue. Its position was not "frivolous" or "unreasonable," but simply unpersuasive. Attorneys' fees are therefore unwarranted.

III.   Conclusion

Accordingly, plaintiff's motion for summary judgment (# 12 on the docket) is allowed, but the request for attorneys' fees and costs is denied. Defendant's motion for summary judgment (#15 on the docket) is denied.

_____          /s/ Rya W. Zobel
        DATE                                             RYA W. ZOBEL
                                                         UNITED STATES DISTRICT JUDGE